# CHARLESTON.

## STATE *v.* MICHAEL.

Submitted January 13, 1893.—Decided January 28, 1893.

37  565
f50  468

37  565
f62  148

1. WITNESS—INCOMPETENCY.

The question of the competency of a witness is a question for the court and not for the jury; and when a witness is offered in a criminal case, and a doubt is raised as to the competency of such witness, it is the duty of the court to determine that question upon a careful examination of the witness as to age, capacity and moral and legal accountability.

2. WITNESS—INCOMPETENCY.

If the proposed witness is an infant of such tender years and mind as to be legally irresponsible for her conduct, and to have no conception of the legal or moral obligation of an oath, nor of the pains and penalties for false swearing, she is not a competent witness.

3. WITNESS—INCOMPETENCY.

A witness introduced in this case on behalf of the State five years of age, of ordinary intelligence, with very little or no knowledge of moral accountability, and clearly outside the pale of legal responsibility, is held competent to testify without a sufficient preliminary examination by the trial court to determine her competency. This was error, which will be reviewed by this Court.

4. WITNESS—INCOMPETENCY.

If on the examination of such witness her incompetency appears, it is the duty of the court on motion of the accused to

exclude her evidence from the jury; and it would be error for the court to refer the question of competency to the jury, either by instruction or otherwise.

GIBSON, HUTCHINSON & GIBSON and CAMPBELL & HOLT for plaintiff in error:

I.—*Proof of penetration, slight or complete, is a condition precedent to the establishment of the crime of rape.*—Desty's Am. Crim. Law, Sec. 133 a; 1 Va. Cas. 307.

II.—*Evidence of penetration in this case does not meet the requirements of law.*—42 Tex. 226 ; 51 Cal. 371 ; 23 Gratt. 954 ; 46 Cal. 549 ; 6 Cal. 221 ; 24 Gratt. 655.

E. S. DOOLITTLE for plaintiff in error:

I.—*Indictment defective.*—22 W. Va. 766 ; Code, c. 144, s. 15 ; Bl. Com. book 4 section 212 ; 3 Ark. 400 ; 5 Gratt. 672 ; 2 Va. Cas. 235 ; 8 Gray 490 ; 42 Tex. 228 ; 3 Park. Cr. (N. Y.) 15 ; 1 Russ. Cr. 586 ; 1 Chitt. Cr. L. 286 ; Arch. Cr. Pl. 47.

II.—*Prosecuting witness incompetent for extreme youth.*—10 Mass. 225 ; 21 Me. 341 ; Stra. 700 ; 1 Greenl. Ev. § 367 ; Id. § 328 ; 1 East P. C. 442 ; 1 Lea. Cr. Cas. 199 ; Whar. Cr. Ev. (9th Ed.) 368 ; 63 Ala. 62 ; 23 Tex. App. 1 ; 22 Tex. App. 529 ; 31 Ind. 90 ; 75 Ala. 21 ; 99 Ill. 368 ; 24 Gratt. 649 ; 29 Gratt. 830 ; 75 Va. 885 ; 82 Va. 107 ; 10 Gratt. 722.

III.—*Proof of penetration necessary to conviction of rape.*— Whar. Cr. L. (8th Ed.) § 555 ; 1 Va. Cas. 307 ; 3 Brev. 339 ; 40 Ala. 325 ; 42 Tex. 189 ; 43 Tex. 583 ; Phill. L. (N. C.) 231 ; 25 Wis. 413 ; 28 Ia. 397 ; 82 Va. 107 ; 2 W. & S. Med. Juris. §§ 245, 282; 2 Greenl. Ev. § 13 (note a).

IV.—*Verdict against the weight of evidence and should have been set aside.*—16 W. Va. 307 ; 23 W. Va. 229.

V.—*Erroneous instruction presumed to be prejudicial to defendant.*—6. W. Va. 258 ; 14 W. Va. 100.

VI.—*Jury should be carefully cautioned by the Court to thoroughly sift the testimony of children of tender years.*—44 Mich. 286 (38 Am. Rep. 265).

ATTORNEY GENERAL ALFRED CALDWELL for the State :

I.—*On indictment.*—Code, c. 144, s. 15 ; 2 Va. Cas. 235.

II.—*The injured child was properly examined as a witness.*—1 Treadw. Con. S. Car. R. 354; 29 Gratt. 835.

III.—*What is rape?*—2 Bish. Cr. L. § 1115; 105 Mass. 376; 8 Cox C. C. 131; 1 Cox C. C. 220; 2 M. C. C. 15; Bouv. L. Dic.; 1 East P. C. 4341; 1 Hawk. P. C. (Curw. ed.) 122, § 2; 22 Wis. 445.

IV.—*Want of evidence of injury and violence not conclusive.*—12 Ia. 66; 83 Ala. 40.

V.—*Prosecutrix could not consent.*—2 Va. Cas. 235; Code, c. 144, s. 15.

VI.—*That other causes might have produced the pains, &c., is not sufficient to set aside the verdict.*—25. Wis. 416.

VII.—*Evidence of other perpetrations admissible.*—4 F. & F. 76.

VIII.—*Proof of emission unnecessary.*—1 Va. Cas. 307; 4 C. & P. 249; 19 Eng. C. L. 368; 1 M. C. C. 342; 40 Ala. 325; 64 Wis. 472; 14 Neb. 205; 102 N. Y. 234.

IX.—*Penetration is enough.*—9 C. & P. 31; 38 Eng. C. L. 24.

X.—*Its extent is immaterial.*—102 N. Y. 234; 9 C. & P. 118; Bish. St. Cr. § 488; Whar. Cr. R. L. § 555; 1 Treadw. Con. S. C. 354; 65 N. C. 466; Houst. Cr. C. (Del.) 363; 45 Conn. 256; 124 Ill. 576; 111 Ind. 279; 9 C. & P. 752; 38 E. C. L. 320; 1 East P. C. 430; 9 C. & P. 118; 38 E. C. L. 80.

XI.—*Proof of penetration may be indirect.*—28 Iowa, 397; 25 Wis. 413; Bish. St. Cr. § 488.

XII.—*Very slightest insertion is sufficient.*—1 C. & K. 393; 47 E. C. L. 393.

XIII.—*Rupture of the hymen even is not essential.*—25 Wis. 415; 65 N. C. 466; 9 C. & P. 752; 9 C. & P. 118; Woodman & Tidy's Forensic Med. & Toxicology, 640; 3 Green. Ev. § 209; 1 Whar. C. L. § 555; 1 Barb. Cr. L. (3d. ed.) 77; Addis. (Penn.) 143.

XIV.—*Verdict should not be disturbed.*—82 Va. 107; 30 Gratt. 855.

DENT, JUDGE:

This is a prosecution against Edward J. Michael for carnal knowledge of Garnet L. Pool, an infant five years of

age. The case was tried at the fall term of the Cabell county Circuit Court. The jury found the accused guilty, and the court sentenced him to ten years' imprisonment in the penitentiary. From this judgment the accused applied for and obtained a writ of error to this Court, and now here assigns five separate errors committed by said trial-court to his prejudice; (1) Failure to quash the indictment. (2) Refusing to give a certain instruction asked. (3) The incompetency of the witness Garnet L. Pool. (4) The failure on the part of the State to prove penetration, the distinguishing element of this crime.

As to the first assignment of error, the indictment appears to be in the usual form, and to follow the language of the statute strictly. To carnally know a child under twelve years of age is a felony, within the meaning of the law; and it is unnecessary to use the word "ravish" in such indictments to define the offence. The court did not err in overruling the motion to quash.

In the instruction asked and refused, the basis of the second assignment of error, occur these words: "The jury may consider whether she has capacity to distinguish right from wrong, truth from falsehood, as well as whether she has any appreciation of the secular and moral sanction of the oath she took." The court refused to give this instruction with this clause in it, probably because it referred the matter of the competency of the witness to the determination of the jury, after the court had already determined her competency and in doing so had already passed on the substance of the instruction. The competency of a witness is a question for the court, and ought not to be left to the determination of the jury, because it is a question of legal ascertainment, requiring wisdom, knowledge and experience.

The third exception in this case raises the question of competency. The court, after asking the witness a few short and rather leading questions, determined she was competent, admitted her evidence to go to the jury, and then refused to exclude it on motion of the accused. In such cases the trial-court has a very wide discretion, and this Court will not review its action unless the error is palpable and flagrant. At fourteen years of age a witness is presum-

ed to be competent. Under that age, no such presumption arises. Under the age of six, presumption of incompetency would arise, and at the age of five the utmost limit would be ordinarily reached, unless extraordinary development of the mental and religious faculties should be shown, to take the case out of the ordinary course of nature.

Children of this age usually have not sufficient development to understand the nature and effect of an oath, and more especially if their parents have been neglectful of their care and education in religious and moral truths. They may have some knowledge that it is wrong to tell a lie, yet this may be so slight as to produce no decided or lasting impression on their minds, but leave them in a decidedly chaotic state, in which they may easily be led to believe that the things that others in authority over them instruct them to say are the indistinct thing called 'truth,' and therefore they must repeat just what they are told to say, or what has often been repeated in their presence. Not being amenable to the law for false swearing, and having no knowledge of moral responsibility, designing and wicked people may easily use them to further intrigues of their own, without fear of punishment for subornation of perjury. They are as clay in the potter's hand, to be moulded, some to honor and some to dishonor. Lacking conscientiousness, they repeat with phonographic precision the things that have been told them to say, be they true or false.

Neither reason nor authority justifies the admission of such witnesses, especially when the pleaded necessity for such admission, if the accused were really guilty of the charge, could have been avoided by the immediate and careful examination of the body of the victim as soon as the supposed crime is suspected to have been committed. And, even if this were not true, it is far better that human justice should fail, and the guilty be left to the infallible justice of God, than that an innocent person should have his life destroyed, or be subjected to lasting torture and ignominy, by reason of the admission by a court of justice of an incompetent and wholly irresponsible witness. It

72

has been held "the effect of an oath on the conscience of a child should arise from religious feelings of a permanent nature, and not merely from instructions confined to the nature of an oath recently communicated to her for the purpose of the trial."

In this case the trial-judge made very little inquiry into the competency of the witness but rather avoided it; and there is nothing in her answers, or in the questions propounded by him, that shows that she had any religious feelings of any character, much less, religious feelings of a permanent nature. To a question propounded by him, "Is it bad to tell stories?" she answers, "Yes, ma'am." A babe who could just articulate could make the same answer without meaning anything. To the question, "What becomes of little girls that tell stories?" she answers, "The bad man gets them." And, as to what the court does with them, she answers, "Puts them in jail." These were apparently from previous instructions for the purpose of the trial, and, so far as the context discloses, merely mechanical on the part of the child, and reveal no religious feelings of a permanent nature.

The judge appears to have purposely avoided any reference to a future state, or of God, or any other question that would make known the religious sentiment or feeling of the child, if she had any. And on the witness stand, in answer to the question if her mother had ever taught her anything about God or Christ, she replies, "No," and says, further, that she knows nothing about God, except that he makes babies, and throws them down to the doctors—a <u>falsehood</u> that had evidently been taught her, as her only light on the existence of her Creator.

Now in these, as in all her answers, she simply gives vent to her childish prattle, and such things as have been told her to say. From none of her answers can her religious or moral accountability for falsehood be gathered. She knows nothing about God, nothing about Christ, has had no religious training or instruction, is only five years of age, has never been to school, can not read, does not know the letters of the alphabet, and seems to have been greatly neglected by her parents, who are from the humbler walks

of life. And the prosecution, by failing to ask her questions concerning the distinguishing element of the crime charged, admit her incompetency to testify concerning the same.

They certainly recognized her incapacity to answer such question, and for the same reason she was not a competent subject for a rigid cross-examination.

Unless we throw open the doors to any child, however young, who can talk and answer questions of simple form, and leading, and assume that every child, from birth, knows the sanctity of an oath, we must draw the line of incompetency somewhere, and that line, as indicated by the wisdom of many decisions founded upon reason and justice, is that, where a child is of such tender years and feeble intelligence as to have no conception of the religious or moral significance of an oath, it is not competent to testify.

Applying that rule to this case, there is no doubt that the trial-court erred to the prejudice of the accused in allowing the testimony of Garnet L. Pool to go to the jury. For this error the judgment of the Circuit Court is reversed, the verdict of the jury set aside, and a new trial awarded.

REVERSED. REMANDED.

## CHARLESTON.

