(No. 21713.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROCCO SARNEY, Plaintiff in Error.

*Opinion filed February 23, 1933.*

HAROLD LEVY, (EDWARD M. KEATING, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Rocco Sarney was indicted in the criminal court of Cook county for the crime of arson. The indictment charged him with burning his dwelling house, at 1900

South Twenty-fourth avenue, in Maywood. Upon a jury trial defendant was found guilty. Motions for a new trial and in arrest of judgment were overruled and defendant was sentenced to the penitentiary. He has prosecuted a writ of error to reverse the judgment.

About 2:30 A. M. on February 15, 1932, the wife of Howard Boone, a neighbor of defendant, called Boone's attention to the fact that defendant's house was smoking. He thought it was steam and went back to bed. About forty-five minutes later she called him again, saying the house was afire. He went across the street and awakened another neighbor named Griffith, who called the fire department. When he came back from Griffith's he and another man who was there went around back of the house. They saw defendant coming out of the kitchen and met him on the back porch. He seemed to be almost overcome from smoke and was burned about his face. His coat was burned in the back. Boone asked defendant to go over to his house and put salve on his face, but he declined to do so. The fire department arrived about 3:30 A. M. The firemen found a barrel, some boxes, kindling, rags and paper piled up in a small reception hall at the front of the building. The southeast corner of the bath-room was on fire. A ladder led from the bath-room floor up through a hatchway into an attic. In the attic were found five piles of wood in pyramidal shape. There were twenty or twenty-five pieces of wood about the size of a man's arm in each pile. One of the piles was burned and another was partly burned. A two-gallon jug which contained gasoline was found underneath one of the piles of wood and a one-gallon jug underneath another. The wood where the gasoline was found was not burning and had not been on fire. It further appears from the evidence that defendant's wife had left him about eight or nine weeks prior to the fire and the house was unoccupied, except for a few pieces of furniture.

John Kronenbitter, chief of the Maywood fire department, testified that when he first went into the building he detected the odor of gas and in the basement discovered the union on a gas meter had been loosened and a two-hole gas burner and a water heater were turned on but not burning; that there was no fire there and he turned the gas off at the meter; that at about 5:00 o'clock on the morning of the fire defendant told him at the police station that he went to his house about 1:30 or 2:00 o'clock A. M. because he felt there was something wrong out there.

Paul E. Bertram, a deputy fire marshal, testified that on the same morning defendant made a similar statement to him; that he then changed his story and told witness that on the night of the fire he had spent the time from 10:00 o'clock till 1:00 o'clock in his barber shop with a woman whose name he did not know, except that her first name was Mary; that at 1:00 o'clock he left her at Madison street and First avenue; that he went back to his barber shop, stayed about half or three-quarters of an hour, and then decided to go out to his house to sleep.

Norman Swanberg, a member of the Maywood police department, testified that as he was taking defendant to the police station defendant told him he went into the house because he thought his family was in there and he wanted to rescue them. Defendant denied the conversation.

Defendant's barber shop was about three miles from his home. There was no way of getting to his home by bus or street car at that hour of the morning. He testified that as it was late when he left the barber shop and it was his day off he decided to go home, fix the fire and sleep there, so that no one would bother him at the barber shop in the morning; that since the time he and his wife separated he stayed at the home part of the time and at the shop part of the time; that when he got within a block of the house he saw the fire, hung his overcoat on the fence outside and went into the house through the basement door and came

up to the first floor through a trap-door; that when he opened the bath-room door the fire hit him in the face, but he did not know how the back of his coat got burned; that the ladder from the bath-room to the attic had been there a long time and they hung clothes up there in the winter, and that he had been taking home empty gallon bottles. He admitted ownership of the gallon bottle introduced in evidence and said it was a hair tonic bottle; that he did not remember bringing it into the attic but he might have done so, and that they never used gasoline in their home. He denied that he set fire to the house and all knowledge of how it came to be on fire.

The property was encumbered by a mortgage of $1500 and the house was insured for $5000. Bertram testified that defendant told him he was just making expenses in his business; that he owed for some supplies and owed his brother-in-law a $600 note which became due the previous June and he was unable to pay it. Boone testified that he told defendant the fire engines had been called and ought to be there any minute, and that defendant replied, "Oh, hell! Let it burn." Defendant's version of the statement is that somebody wanted to go in the house to take the furniture out, and he said, "Hell, no; don't go in; you'll get burned like I did; the firemen will be here in a minute."

Kronenbitter testified without objections that at the police station, about 10:00 o'clock on the morning after the fire, a Mr. Ruel, operator of a gasoline station in Maywood, stated in defendant's presence that on Friday evening previous to the fire defendant bought a gallon of gasoline from him and paid him fifteen cents for it, and that when Ruel said defendant was the man who bought the gasoline from him defendant denied it.

Edward C. Feldman testified that in the presence of defendant he asked Ruel if he could identify the party who purchased the gasoline at his station on the night of Fri-

day, February 12, in a two-gallon jug. Defendant's counsel objected to the testimony on the ground that defendant had denied Ruel's statement, and insisted that the court allow him to ask the witness, outside the presence of the jury, whether or not defendant denied the purchase. The court refused the request. The witness then testified that in defendant's presence Ruel said defendant was the man who purchased gasoline from him on the night of February 12 and identified the two-gallon jug offered in evidence as the jug he poured the gasoline into; that defendant had on an overcoat at the time of the conversation, and Ruel further said it was the overcoat defendant wore when he purchased the gasoline from him on the night of February 12. On cross-examination he testified that defendant denied he had purchased gasoline from Ruel. Defendant's counsel asked the court to strike the testimony from the record and instruct the jury to disregard it, and asked leave to withdraw a juror on account of prejudicial statements. The motion was denied. A long colloquy ensued between court and counsel, during which the court stated that defendant's denial of the purchase would be stricken but the identification of the man who purchased it would stand. The witness then testified that defendant denied purchasing any gas at all from Ruel and denied being at the gas station. The court then permitted the testimony as to the identification of the overcoat and the jug to stand.

An admission of guilt may be implied from the conduct of a party charged with crime who remains silent when a statement is made in his hearing that he was concerned in the commission of the crime, if the statement is made under circumstances affording him an opportunity to reply and where a man similarly situated would ordinarily deny the imputation. Such statement will never be admissible where the accused unequivocally denies the truth of the statement or where he shows clearly that he does not acquiesce in it. (*People* v. *Nitti*, 312 Ill. 73; *People* v. *Schall-*

*man,* 273 id. 564.) It is not necessary to deny the statement in the language in which it is made or in detail. A general denial of the whole statement is sufficient. Unless the words or conduct of the accused under the circumstances are such that it is a natural and reasonable inference that he admitted the truth of the charge such statement is inadmissible. (*People* v. *Harrison,* 261 Ill. 517.) The testimony of Feldman was not only incompetent but highly prejudicial to defendant. The witness Ruel was present in the court room during the examination of the witnesses for the People on the first day of the trial but was not called to testify by the prosecution, and no reason is shown why he was not called. At the close of the People's testimony on the second day defendant asked a short recess of five minutes to procure the attendance of Ruel and stated he had been subpœnaed. The application was denied.

The judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*