(No. 23057.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GORDON KRINER, Plaintiff in Error.

*Opinion filed December 16, 1935—Rehearing denied Feb. 5, 1936.*

EDWARD PREE, for plaintiff in error.

OTTO KERNER, Attorney General, A. H. GREENING, State's Attorney, J. J. NEIGER, and THOMAS W. HOOPES, for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

In considering this writ of error to the Sangamon county circuit court to review the conviction of Gordon Kriner of robbery while armed, a review of the testimony is essential.

Julius Hill testified that on the night of April 20, 1934, he was in the grocery and meat market of Fred Sudduth, at 709 West Jefferson street, in Springfield. Three other men, Sudduth, White and Foster, were in the store. Between 8:30 and 9:00 o'clock two other men entered the store and ordered the men named to raise their hands and go to the back room of the store. Hill identified Kriner as one of the robbers. He was armed with a gun and stood within six feet of the witness. Hill said the defendant followed the men to the back room and stood guard while his companion robbed the cash register. The store was well lighted, and this witness stood and looked at the defendant until he was ordered to face the wall. After the cash register was ransacked the four men were locked in the ice-box, from which they were later released by some small boys. They notified the police at once. On cross-examination Hill said the robbery occurred about 8:40. He had never seen the defendant before and could not describe him further than to say that he wore a dark coat and cap.

Charles White testified that he was also at the store when it was robbed. A part of his testimony was as fol-

lows: "The man that entered the store with the gun was Kriner. That is the man that sits here at the trial table. I am sure of that. He came right back with his gun, and he shoved his gun along ahead of him, and then made us all march back to the ice-box, and we went around back of the side counter into the back room." The witness did not see Kriner while he and the other men were in the back room, because he was made to face the wall. The next time he saw Kriner was at the police station. On cross-examination he admitted that he could not see well at night.

Harry Foster also identified the defendant. He testified that the room was well lighted and that he had an opportunity to see the defendant as he entered the door and came up to where the four men were. The defendant said, "Stick them up!" and ordered them to the back room. After they entered the back room the defendant was in front of them with a gun but the witness did not have an opportunity to further observe him. He stated that the defendant wore a dark suit and a dark cap and was about six feet two inches tall. On cross-examination he testified that the robbery occurred at 8:30 and took about five or six minutes. He had never seen the defendant before and saw him only two or three minutes the night of the robbery. He admitted that he was excited that night, but he was positive in his identification, and that the defendant wore a dark coat and cap. He next saw him at the police station on the following evening. Foster denied that the police officers told him, "This is the man we have been looking for." He testified that the defendant was brought before him alone and that he did not pick him out of a group.

Fred Sudduth, the owner of the meat market and grocery store, was not positive that the defendant was one of the robbers. He admitted being a very poor observer. However, he denied that when Julius Hill was testifying at the preliminary hearing he made a statement to May

Dodson to the effect that Hill was wrong and that the defendant was not the man.

Horace Palmer, a Springfield police officer, testified he called the four eye-witnesses to the police station to identify the defendant. Sudduth stated he was not positive, because he did not get a good look at the defendant. Hill, White and Foster positively identified Kriner as one of the robbers. The defendant stated in front of the witnesses that it was a "bum rap." Counsel for the defendant then moved to strike the testimony of this witness and to instruct the jury to disregard it because the statements he testified to had been denied by the defendant. The motion was allowed and the jury instructed. The defendant then asked leave to withdraw a juror. In denying this motion the court stated that testimony to the same effect had been given by other witnesses on direct examination, and that the officer's testimony militated in favor of the defendant.

The defense was an alibi. May Dodson testified that she had known the defendant for about nine years. She saw him on the night of the robbery at the Strand Theatre in Springfield, between 8:30 and 9:00 o'clock. On rebuttal, officer Palmer stated that May Dodson told him she did not go to the show until 9:00 o'clock that evening and did not see the defendant until he came into the show later. The witness Dodson testified that she was on the public square at 8:20. She looked at the clock in Broadwell's drug store and then went into the theatre, where she was joined by the defendant and his wife in about fifteen minutes.

Carl Marquard, a defense witness, testified that when he and the defendant went into the Veterans' Inn at 8:25 o'clock the night of the robbery, May Dodson was there.

Hilda Dushinski, a waitress at the Veterans' Inn, testified that Kriner and Marquard were at the inn from 8:00 until 8:20 on the evening of the robbery. She testified that Kriner had on a light hat, dark trousers and a zipper suede

jacket. She did not remember how any of the other customers were dressed. The Veterans' Inn was about thirteen blocks from the scene of the crime. Her testimony that the defendant was there at 8:20 would not be conclusive that he was not at the robbery between 8:30 and 9:00 o'clock.

Carl Marquard further testified that he was with the defendant until about 8:30 that evening, when Kriner left to meet the girl who is now his wife. He testified that he saw him about 11:00 o'clock that night, and that he was with him when he was arrested the following night at the Veterans' Inn. He testified that the defendant wore a pair of dark trousers and a light-blue shirt, with a brown suede leather jacket and a little felt hat.

Kriner contends that the court erred in overruling his motion for leave to withdraw a juror and to declare a mistrial on account of Palmer's testimony. In response to the defendant's prior motion the court struck the testimony and instructed the jury to disregard it. The testimony was incompetent, because Palmer admitted that in the conversation the defendant denied his guilt. There was other testimony to the effect that the defendant had been identified at the police station, and the defendant was not prejudiced. The rule is that statements are not admissible in evidence as admissions where the accused unequivocally denies the truth of them. (*People* v. *Sarney,* 351 Ill. 428, 432.) We have never held that their admission is prejudicial error where the court, upon motion, strikes the testimony and instructs the jury to disregard it, and where there is similar evidence in the record which is not objected to and which is not objectionable. This point is not well taken.

The defendant contends that the evidence does not support the verdict. Two witnesses positively identified Kriner as the man who forced them into the back room of the store at the point of a gun while his companion took the money from the cash register. It is true, Charles White admitted that he did not see so well at night. The witness

Sudduth did not get a good look at the defendant and was unable to identify him. May Dodson's testimony as to the alibi is discredited by her statement to officer Palmer that she did not see the defendant in the theatre until after 9:00 o'clock. The robbery was committed between 8:30 and 9:00 o'clock. Her testimony that she was on the public square at 8:20 and immediately afterwards went to the theatre does not agree with Marquard's testimony that he saw her in the Veterans' Inn about 8:25 o'clock. The jury saw and heard the witnesses. It is their province to pass upon disputed questions of fact, and we are not warranted in disturbing their verdict unless, from a consideration of all the evidence, there is a well-founded doubt of the guilt of the accused. (*People* v. *Kukulski,* 358 Ill. 601, 610; *People* v. *Nowicki,* 330 id. 381.) The jury was warranted in disregarding the alibi evidence in this record and in finding the defendant guilty.

The defendant contends that the method of identification resorted to was of a doubtful character and is entitled to little weight. The record does not show clearly the circumstances under which the identification was made at the police station. Harry Foster testified that the defendant was brought before him alone at the police station and the police officers asked him if he had ever seen the defendant before. He denied that they said, "This is the man we have been looking for." The manner of identification only affects the weight of the testimony. Under the facts before us the identification of Kriner was sufficient and was made without prejudice to him.

We do not consider this case one which falls within the rule that the record should be free from error if the case is close.

For the reasons indicated the judgment is affirmed.

*Judgment affirmed.*