(No. 30573.—▮▮▮▮▮▮▮▮▮▮
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOIS WILLSON, Plaintiff in Error.

*Opinion filed September 24, 1948.*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

JAMES H. BANDY, and GOLDENHERSH & GOLDENHERSH, both of East St. Louis, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and VIRGIL W. MILLS, State's Attorney, of Fairfield,

(FRANCIS S. FEIGER, of Fairfield, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Lois Willson was charged with the murder of her husband by the grand jury of Wayne County, and upon a trial by jury was found guilty and sentenced to imprisonment in the penitentiary for a term of fifty years. She prosecutes a writ of error out of this court.

The controlling feature of the case is whether the competent evidence is sufficient to show the guilt of the defendant beyond a reasonable doubt, and, hence, a critical analysis of the testimony is necessary.

Leon Willson and his wife and two children, Linden Lee Willson and Linda Lou Willson, lived in a three-room house on a small farm in Wayne County. On the afternoon of November 3, 1946, the family of Jennings Holman visited that of the deceased, and during the afternoon Mr. Holman and the deceased went hunting, and after returning the family stayed to dinner with the Willsons, and left in the neighborhood of eight o'clock in the evening. No circumstances are narrated by the Holmans indicating a rift in the domestic life of the deceased and his wife.

On the morning of November 4, about 7:30 o'clock, the defendant called from her yard to that of the Carter family, who lived about thirty-five rods away, upon the same road, urging some one to come quick that Linden had shot Leon, and "I think killed him; he has never moved yet." Lindy Carter, the person in the yard, came over immediately, entered the house, and found a shotgun, one end of which was on a chair in the kitchen and the other end on the floor, and the deceased lying in bed upon his face, badly injured. He inquired of the defendant where the car keys were, and she said in the pocket of the trousers, and he removed the keys from the pocket, and while doing so he noticed the body moved up and down,

indicating Willson was not dead. Carter took the keys to the automobile, and he and the defendant and the two children got into the car, where the defendant said: "Linden, what did you shoot daddy for," and he replied "I didn't shoot daddy. You shot daddy and I am going to shoot you." The boy Linden was about three years of age, and this conversation took place some ten minutes after Lindy Carter had arrived at the house. They immediately got into the car and drove down the road to where they overtook the father of Lindy Carter, Herschel Carter, and another man, and the defendant there said: "Herschel, Linden shot his daddy, and I believe he killed him. What in the world can I do?" And he replied "We will go down there." And when he came to the house he found the shotgun lying substantially as testified to by his son. The defendant asked him twice if the deceased was still alive, and said we had better take him to the hospital, and Herschel replied, "Hell, Lois, this man cannot be moved;" and he died a few moments later.

Substantially the same remarks were made by the defendant to the coroner when she said Linden Lee shot him, and the little boy said "No, mamma, you shot daddy." Lindy Carter also testified that while they were driving down the road to overtake his father, the defendant said "We have been having hell but it's all over now." Mrs. Holman, who had visited the Willsons the day before, said that the defendant asked her "if Jennings or Leon was to get killed, would you bury them in their old suit or buy them a new one?" This conversation grew out of the fact that they were looking at some pictures, and among them was the picture of a corpse, which the defendant thought should not have been taken.

The foregoing is the substance of the actual testimony connecting the defendant with the commission of the crime. The evidence shows that they were living in a small house, and the furniture and equipment indicated they were very

poor. They had these two small children, and the husband worked in the oil fields or on the small farm on which they resided. The remarks of the defendant indicated she believed that the coroner and the State's Attorney were attempting to influence the remarks of the little boy, and the coroner admits that he was feeding him candy or gum.

The People also conducted some experiments to ascertain whether the boy Linden Lee could cock the gun by pulling back its hammer. No preliminary foundation was laid to show similar surrounding circumstances, but the testimony does show that while the boy could not cock the gun, he could readily pull the trigger. The People also conducted experiments to show how far the gun would recoil when lying on the ground and fired, but there was no testimony offered to show the gun had been laid on the floor of the house, and in addition the evidence shows a string was tied to the trigger and pulled, which would naturally give the gun an impetus in the direction of the recoil. These experiments were undoubtedly for the purpose of showing inability of the child Linden Lee to discharge the gun and accidentally kill his father. There is no proof whatever as to where the gun was located; whether it was on a rack, or standing, or was on the floor; whether it was cocked or uncocked, or any circumstances whatever to show whether or not it was accessible to the activities of the child.

All of the evidence pertaining to the statements made by the child were objected to by the defendant in the general motion made to direct a verdict in her favor. The above and foregoing is all of the testimony in the case tending to prove the guilt of the defendant, other than the fact that she had the opportunity by living in the same house with the deceased.

The plaintiff in error claims the court committed error in refusing to exclude, at the close of all the testimony, all of the remarks or statements of this child of tender

years, and the People opposed this motion by saying it should have been made at the time it first appeared in the record in the case.

It is not necessary for us to pass upon this particular error as it is well settled that this court may review all of the evidence to determine whether it shows the guilt of the defendant beyond a reasonable doubt, and where the record leaves this court with a grave and substantial doubt of the guilt of the defendant we will reverse the judgment. (*People* v. *Bradley,* 375 Ill. 182; *People* v. *Logan,* 358 Ill. 64; *People* v. *Shack,* 396 Ill. 285.) The People do not indicate upon what ground they considered the statements made by a three-year-old child competent or proper evidence upon which to convict a person of murder. As a matter of fact the child was not offered as a witness, but his remarks to others were the principal testimony, and, in fact, almost the sole testimony upon which the defendant was convicted. The People apparently rely upon the theory that there was an accusation made by the child against its mother, and that her failure to categorically deny said statements constituted an admission of guilt. Such position is not borne out by the facts. If considered in the nature of an accusation, the mother made the accusation, and the answer of the child was in denial of this charge. The evidence shows the mother in the presence of two or three other witnesses made the assertion that she thought Linden Lee killed his father. Certainly when a charge is made by a defendant that another individual did the killing, and such other person would answer with a countercharge, no admission, expressed or implied, could be attributed to either from such a conversation, because the very fact they are charging each other separately excludes implication of an admission in any respect. We have called attention several times to the caution with which such testimony should be admitted, and the scrutiny which should be given to it by a jury. In *People* v. *Schallman,* 273 Ill. 564, in passing

upon this question we said: "Where the incriminating statements or accusations are denied *in toto* by the accused there can be no implied admission of his guilt and such statements are wholly inadmissible against him." Here, the accusation is made by the defendant, and the answer to such accusation is claimed by the People to constitute an accusation of a character that must be specifically denied. We find no law to support this position.

In *People* v. *Sarney*, 351 Ill. 428, referring to such implied admissions, we said: "Unless the words or conduct of the accused under the circumstances are such that it is a natural and reasonable inference that he admitted the truth of the charge such statement is inadmissible." None of the other witnesses testified to any incriminating statement or admission by the defendant, and the consensus of all of them is to the effect that she made the accusation and the three-year-old child answered as indicated above. We think that the proof of the statement in this record wholly failed to prove any admission of guilt upon the part of the defendant.

Very little evidence of motive appears in the case. While it is true that motive is not necessary to convict one accused of murder, still it is an important circumstance in determining the guilt of the defendant, where the evidence is entirely circumstantial. The People refer to the statement "We have been having hell but it's all over now." The statement, alone and by itself, does not establish, nor tend to establish, any motive for murder.

Attention is also called to the fact that the boy Linden Lee was unclothed. The fact that the child remained undressed during the turmoil and excitement, when the visitors, witnesses and officers were present, does not indicate anything to our minds which establishes proof of the defendant's guilt.

As an alternative theory the People seem to believe the statements of the child, Linden Lee, were admissible as a

part of the *res gestae*. The true inquiry in determining whether certain actions or words constitute a part of the *res gestae* is whether the declarations are a verbal act, illustrating, explaining or interpreting other parts of the transaction of which they are themselves a part, or merely a history of a completed past affair. In one case they are competent; in the other they are not. (*McMahon* v. *Chicago City Railway Co.* 239 Ill. 334; *People* v. *Limeberry,* 298 Ill. 355; *People* v. *Willy,* 301 Ill. 307.) In the present case when the first witness arrived the homicide was complete. At once the defendant and he started in a car to reach the witness's father. After they had gotten into the car, some minutes later, the defendant initiated the conversation by inquiring of her son why he had shot his father, and the incriminating answer of the child was not something that came spontaneously from him, as a part of the action in the house, but in answer to the mother, who indicated he had done something in the house. It lacked two elements necessary to come within the rule: First, it was not spontaneous, but was induced by a question; and second, because it is narrative or historical of a past event. The same is true in every other instance where the accusation of the child was repeated to other witnesses, and by them related to the jury. In addition to the foregoing the testimony of the coroner concerning such remarks made by the child showed they were elicited by talking with the child out of the presence of the mother, and then allowed in evidence, which, of course, was not admissible, and was highly prejudicial. We conclude, therefore, that the statements of the child were neither admissible on the ground of the *res gestae,* nor as tending to create an implied admission upon the part of the defendant.

The experiments with the shotgun were also inadmissible. No grounds were laid for any of the experiments of the witness by the proof of substantial similarity of the surrounding circumstances. (*Hauser* v. *People,* 210 Ill.

253; *People* v. *Pfanschmidt,* 262 Ill. 411; *State* v. *Allison,* 330 Mo. 773, 51 S. W. 2d 51.) The facts in the *Allison case* were quite similar to those in the instant case, in so far as they relate to experiments made with a gun used in a homicide, and the cause was reversed for the use of experimental evidence quite similar to that used here. (See note 8 A.L.R. 18.) The assumption is made that the child must have cocked the gun, but such an inference is not admissible, as there is no proof whatever upon the subject, and it might well have been left cocked by the father when he returned from the hunting trip of the previous day, and the incompetent experiments show that while the child could not cock the gun, he could readily pull the trigger. The assumption of the necessity of cocking the gun being incompetent, the proof of the experiments made was likewise wholly incompetent and also prejudicial. Likewise, the experiments of the extent of the recoil were improper, because, not only was there no proof to show that the gun was lying on the floor, but the evidence also shows that the trigger was pulled by a string, which naturally would give an impetus in the direction of the recoil. Common knowledge indicates that the handling of the gun, whether by an adult or an infant, would retard to a certain extent the distance of its recoil, but regardless of this, unless it was shown that the gun had been lying upon the floor, there is no basis upon which to offer such testimony.

There is another rule of law which must be taken into consideration, and which is not adequately covered by the brief of the People, and that is, there is a serious question as to whether, assuming all of the testimony offered to be competent, the *corpus delicti* has been established. In the late case of *People* v. *Manske,* 399 Ill. 176, we again announced the rule regarding *corpus delicti* in homicide cases as follows: "In a trial for murder it consists of two parts or essential elements,—the fact of death, and the fact that

death was produced by the criminal agency of some person. (*People* v. *Bentley*, 357 Ill. 82; *People* v. *Hanson*, 359 Ill. 266.) Both of these elements must be established beyond a reasonable doubt. (*Campbell* v. *People*, 159 Ill. 9; *Hoch* v. *People*, 219 Ill. 265; *People* v. *Ahrling*, 279 Ill. 70.)"

It has likewise been the law since the case of *May* v. *People*, 92 Ill. 343, that when the *corpus delicti* is not otherwise proved, the prisoner's confession will not justify a conviction. (See also, *Wistrand* v. *People*, 213 Ill. 72; *People* v. *Wulff*, 313 Ill. 286.) If the theory of the People is sustained that the statement of the child, Linden Lee, under the circumstances is an implied admission, then it cannot possibly amount to more than the confession of the defendant that she shot the deceased. She would then be the criminal agency, one of the absolute essentials to the *corpus delicti* in the commission of the crime of murder, and therefore, under the authorities cited, the *corpus delicti* would be insufficiently established by a confession to justify her conviction. On the other hand, it is not disclosed how the statement of the child, even though considered a part of the *res gestae*, would have any different effect.

We must keep in mind there is not the slightest intimation that the defendant herself made any admission or statement indicating that she was the one who caused the death of her husband. The People place great reliance upon the case of *State* v. *Lasecki*, 90 Ohio St. 10, 106 N.E. 660. It is true that in that case the court admitted the statement of a child of tender years as a part of the *res gestae*, yet, facts in the case also show there was other evidence sufficient to sustain a conviction, the one question being whether error was committed by allowing the introduction of the child's statement to the jury. In that case the court went to great lengths to expand the common-law rule with respect to the declarations which made a part of the *res gestae*, and after quoting the rule laid down in

Underhill on Criminal Evidence (2d ed.) sec. 93, admitting that the rule as expanded by it was contrary to the previously recognized rule, based its opinion entirely upon probabilities, and relaxed the previously recognized rule. All of the authorities cited by the People on this point are to be found in this same case. We are not disposed to change the rule as it has been previously followed, in that, to become a part of the *res gestae,* the statement must not be historical in character, and must be a verbal act explaining other parts of the transaction. In the very nature of the statement it is a recital of what the defendant had done in the past, and it does not appear to be a statement that was a part of the transaction itself.

We have examined and searched both the English and American authorities and have yet to find where the testimony of a child younger than six years of age has been admitted in the courts, and there are many cases where it is rejected when the child was of more mature years. In *State v. Michael,* 37 W. Va. 565, 16 S.E. 803, in discussing this principle, the court said: "Under the age of six presumption of incompetency would arise, and at the age of five the utmost limit would be ordinarily reached, unless extraordinary development of the mental and religious faculties should be shown, to take the case out of the ordinary course of nature. Children of this age usually have not sufficient development to understand the nature and effect of an oath, and more especially if their parents have been neglectful of their care and education in religious and moral truths. * * * They are as clay in the potter's hand, to be molded, some to honor, and some to dishonor. Lacking conscientiousness, they repeat with phonographic precision the things that have been told them to say, be they true or false. Neither reason nor authority justifies the admission of such witnesses. * * *"

In the instant case, while the first statement of the child was in answer to an accusation by the mother, all of the

remaining statements were but a repetition brought about by the questions of either bystanders or court officials. With this situation presented to us, where the witness is incompetent to testify, where there is a denial of the implications caused by the statement of the child, where there is absolutely no proof of admissions or declarations made by the defendant shown by adult witnesses, and no circumstances other than the presence of the defendant in her own home where the homicide occurred, proof of guilt beyond a reasonable doubt has not been established. In cases where conviction of murder is sought upon circumstantial evidence, alone, the rule is unquestioned that before a conviction can be had the guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. *People* v. *Wilson,* 400 Ill. 603; *People* v. *Campagna,* 240 Ill. 378; *Mooney* v. *People,* 111 Ill. 388; *People* v. *Ahrling,* 279 Ill. 70.

A motion has been made by the People to strike the report of testimony in the case. We have examined the record and believe the motion should be denied. The People have recited in their brief all of the facts referred to above, thus admitting the facts upon which claims of plaintiff in error are based. They show clearly she did not receive the benefit of the law guaranteed to persons accused of crime. To sustain this motion, even if well founded, would make procedural rules an instrument of oppression, and not, as intended, one for the purpose of facilitating the administration of justice.

The judgment of the circuit court of Wayne County is reversed.                                    *Judgment reversed.*