464

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GRANT STRIKER *et al.*, Defendants-Appellants.

(No. 55139;

First District—August 13, 1971.

*Rehearing denied October 26, 1971.*

Hoarce N. Lund, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago, James B. Zagel, Assistant Attorney General, and Edward V. Hanrahan, State's Attorney, of Chicago, Elmer C. Kissane and Anthony Montemurro, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court as modified upon denial of petition for rehearing:

At the conclusion of a jury trial defendant Striker was convicted of:

involuntary manslaughter [1] for which he was sentenced to a five to ten year term; leaving the scene of a motor vehicle accident [2] for which he was sentenced to a one year term; and falsely reporting the theft of a motor vehicle [3] for which he was sentenced to a one year term. All terms were to run concurrently. At the same trial defendant Clark was convicted of falsely reporting the theft of a motor vehicle (see footnote 3 below), for which he was sentenced to a term of one year. Both defendants appealed directly to the Supreme Court of Illinois pursuant to Supreme Court Rule 603 which provides for direct review of final judgments of the circuit courts in cases involving a constitutional question. The Supreme Court determined that it lacked jurisdiction of the case on direct appeal and transferred it to this court.

Richard Woods testified that he left his place of employment on the morning of December 3, 1967, took public transportation to Fullerton Avenue and Pulaski Road where he entered a restaurant. He left the restaurant at approximately 2:00 A.M. walking in an easterly direction on Fullerton Avenue. As he crossed Hamlin Avenue he heard the screeching of tires but could not determine from which direction the sound came. As he approached Ridgeway (one block east of Hamlin) two men came around the corner toward him. As he stopped to see where they were going, they passed within three feet of him. One man, whose face was seen by the witness and who was identified by the witness in court as Striker, was about six feet two inches tall and was wearing a brown leather jacket and dark pants. The second man was shorter, but the witness did not see his face or clothing. The witness then proceeded south on Ridgeway where he saw an automobile parked on the sidewalk farther down the street. He did not, however, go to the car, but instead he

---

[1] Ill. Rev. Stat. 1967, ch. 38, par. 9—3 provides:

"(a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

[2] Ill. Rev. Stat. 1967, ch. 95½, par. 133 provides:

"(a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at, the scene of the accident until he has fulfilled the requirements of Section 38 * * *"

[3] Ill. Rev. Stat. 1967, ch. 95½, par. 4—102 provides:

It is a violation of this chapter for:

* * *

(c) A person to make a false report of the theft or conversion of a motor vehicle or other vehicle to any police officer of this State; * * *.

walked down an alley and continued home. He did not mention the occurrence until the police questioned his grandmother the next morning. He was then taken to the Shakespeare Police Station where he viewed Striker who was in a cell. At a subsequent coroner's inquest the witness testified that he could not positively identify Striker as the man who came past him on Fullerton Avenue.

Police Officer Alvin Shimkus testified that on the morning of December 3, 1967, he was assigned to make an investigation of an automobile accident. He proceeded to 2329 North Ridgeway where he found a 1962 Pontiac convertible on the sidewalk near the east side of the street.

Police Officer Eugene Nick testified that shortly after 3:00 A.M. on December 3, 1967, he went to the Studio 31 lounge to investigate a theft of an automobile. Upon arrival he found the two defendants in the vestibule of the lounge. Striker said his car was stolen between 1:15 A.M. and 2:00 A.M. Striker also said he had been in Studio 31 since 1:15 A.M. After telling defendants that the car was involved in a hit and run accident, Nick took them to Belmont Hospital.

Jake Ketchejian testified that he was the owner of Studio 31 lounge at 3739 West Fullerton Avenue. From the time of his arrival at Studio 31, approximately midnight December 2, 1967, until 3:00 A.M. on the morning of December 3, 1967, he checked the identifications of patrons. He did not know defendants personally but knew who they were. The only time he saw defendants that morning was at 3:00 A.M. when they came into the vestibule from across the street to make a telephone call. About five minutes later a police car arrived and the defendants entered the car.

Sergeant Robert Doherty responded to the scene where, upon his arrival, he saw a deceased being placed in a fire department ambulance. Later, while at Belmont Hospital, defendants were brought to him. Striker was wearing a dark leather jacket and black pants. Doherty asked Striker if he owned a 1962 Pontiac convertible. Striker said he did, but that he had last seen the car an hour and a half or two hours earlier. Clark said he had been with Striker all evening. When Striker exhibited a set of car keys he was arrested. Doherty returned to the crime scene and determined that the keys exhibited by Striker fit the ignition of the 1962 Pontiac. He also noticed that there was no evidence of any tampering with the engine or the ignition. During the course of the trial, Doherty examined a photograph and testified that it depicted the victim as he appeared on the morning of December 3, 1967. (Subsequently a stipulation was made to the effect that the photograph was that of Robert McGlynn, the person Striker allegedly killed.)

Charles Hartman testified for the State that there was a party at his

house on the night of December 2, 1967. Striker came to that party about 8:00 P.M. or 8:30 P.M. The witness left at 1:10 A.M. December 3, 1967, but returned at 1:30 A.M. Upon returning he found Striker still there. Striker and Clark left the party together at approximately 1:30 A.M. or 2:00 A.M.

Victor Capadona testified that he owned a tavern at 3621 West Fullerton. Robert McGlynn left that tavern at 1:45 A.M. December 3, 1967.

Police Officer James Norton testified that the fingerprints lifted from the vehicle matched those of Striker.

An autopsy report, stipulated to and admitted into evidence revealed that McGlynn's death was caused by multiple internal injuries and a skull fracture.

Karen Stutz testified for the defense that she was in the Studio 31 lounge during the early morning hours of December 3, 1967. There, at approximately 2:00 A.M. or 2:15 A.M., she saw Striker, whom she had known since high school. They had a brief conversation.

Grant Striker testified on his own behalf that on the evening of December 2, 1967, he was at a party in the home of Mr. and Mrs. Hartman. At approximately 1:20 A.M. or 1:25 A.M. December 3, 1967, while wearing a green trenchcoat, he left the party with Clark and drove directly to the Studio 31 lounge to keep a previously arranged meeting with Sharon Skowronski. Defendants parked the car near the corner of Fullerton and Ridgeway Avenues and entered the lounge at 1:30 A.M. or 1:35 A.M. There Striker met Sharon Skowronski with whom he talked and danced. At 2:45 A.M. Striker, along with Clark and Skowronski, left Studio 31 and walked toward the place where the car had been parked. When defendants saw the car was missing they put Showronski in a cab and went into the vestibule of Studio 31 to call the police. Officer Nick arrived and told Striker that his car was involved in a hit and run accident. Nick then told defendants to come with him. Striker asked Nick to go into the lounge to talk to people who had seen him. Nick, however, only talked to the owner. Defendants were taken to Belmont Hospital and then to Shakespeare police station. Later that morning, at 9:00 A.M. or 10:00 A.M. Striker was taken to the crime scene where a crowd gathered. Some of the onlookers were asked if they could identify him but they could not. Later, back at the Shakespeare police station, Doherty brought Woods and another man to Striker's cell but they could not identify him. Striker purchased the car from Fitch about one or two weeks before the incident.

Walter Fitch testified that he had owned the 1962 Pontiac for approximately fifteen months before he sold it to Striker. At least two other people had keys to the car and at least three others had driven it recently.

He had previously started the car through the use of some device other than the ordinary ignition system.

Sharon Skowronski testified that she went to Studio 31 at 1:00 A.M. on the morning of December 3, 1967, to keep a previously made engagement with Striker. Defendants arrived about 20 or 25 minutes later. All three left together and found the car missing. She was then put into a cab by defendants.

Officer Nick testified in rebuttal that although Striker told him that there were people in Studio 31 who knew he had been there he never asked Nick to talk to them.

Sergeant Doherty also testified in rebuttal that he made no investigation of persons other than defendants with respect to the larceny of the automobile.

*Opinion*

■■ All evidence going to defendant Striker's conviction of involuntary manslaughter and leaving the scene of a motor vehicle accident is circumstantial. When a conviction is based upon such evidence all facts must be consistent with defendant's guilt and inconsistent with any reasonable hypothesis of innocence. *People v. Branion* (1970), 47 Ill.2d 70, 77. The evidence presented by the State shows that Striker and Clark left a party on December 3, 1967, at 1:30 A.M. At 2:00 A.M. Richard Woods, while walking on Fullerton Avenue east of Pulaski Road, heard the screech of tires and, as he approached Ridgeway, saw two men round the corner and run towards him, passing within three feet of him. Although Woods identified Striker in court as one of those two men, on at least one other occasion he failed to positively identify Striker. According to Woods, one of the men who passed him on Fullerton Avenue that night was wearing a brown leather jacket; Striker was arrested wearing a dark leather jacket. An automobile owned by Striker and containing his fingerprints was found on the sidewalk at 2329 North Ridgeway. Defendants were not in the Studio 31 lounge until 3:00 A.M. when they made a telephone call from the vestibule. Defendant was arrested with the keys to his car on his person and the engine and ignition of the car bore no evidence of tampering.

The defense, however, seeking to raise doubt of guilt presented evidence intending to establish the hypothesis that the auto had been stolen and whoever stole it could have struck and killed the deceased. This evidence is to the effect that defendant were at a party until 1:25 A.M. December 3, 1967. After leaving that party they drove directly to Fullerton and Ridgeway where the car was parked, defendants then entered the Studio 31 lounge where they remained until 2:45 A.M. As they left the

lounge they noticed the car was missing and called the police to report the stolen vehicle.

The only evidence actually linking Striker to the offenses for which he was tried was the identification testimony of Woods but that testimony is uncertain at best when viewed in the light of his previous inability to positively identify Striker. That his identification testimony should be considered cautiously is especially brought out by the manner in which Woods viewed Striker, once alone in a cell and thereafter at a coroner's inquest at which he did not make a positive identification. It is important to note that where Woods saw two men run past him, he was at least one block from the crime scene and on a different street. Additionally no one saw the defendants run from the car and there is no evidence whatsoever which would lead the jury to find beyond a reasonable doubt that one or the other of the defendants was driving the car at the time it struck and killed McGlynn. The fact that Striker's fingerprints were found on the car is certainly not surprising in light of the fact that it was his car and he admitted driving it that night. Nor is it significant that Striker owned the car or had the car keys in his possession at the time of arrest.

■■ While some of the evidence may be consistent with Striker's guilt it is not inconsistent beyond a reasonable doubt with their theory of innocence. We, therefore, must reverse Striker's conviction for involuntary manslaughter and upon the same basis his conviction for leaving the scene of a motor vehicle accident must also be reversed.

■■ We must also reverse the convictions of both defendants for falsely reporting the theft of a motor vehicle. The State introduced no evidence directly indicating that the reported theft of the vehicle was false. True, there was evidence that Striker had the keys to the car when he was arrested and his fingerprints were found on the vehicle but because it was his car it would be expected that he would have the keys and his fingerprints would be found on the car. It is incumbent upon the State to establish beyond a reasonable doubt that a crime was committed. *People v. Kirilenko* (1953), 1 Ill.2d 90, 94 and *People v. Willson* (1948), 401 Ill. 68, 77. When the State has failed in that regard, as is the case here, a conviction will not stand.

The convictions of both defendants are reversed.

Judgments reversed.

ENGLISH, P. J. and DRUCKER, J., concur.