# CHARLESTON.

## STATE *v.* BERTHA PRICE.

### Submitted May 13, 1924.   Decided May 20, 1924.

1.  CRIMINAL LAW—*Conviction Not Set Aside if Evidence, After Striking Out Defendant's Oral Testimony, Fully Sustains Verdict.*

    A verdict and sentence in a criminal case will not on motion be set aside because contrary to the evidence, if by striking out the defendant's verbal evidence which is in direct conflict with that of the prosecution, the evidence so considered fully sustains the verdict. (p. 500).

2.  SAME—WITNESSES—*Competency of Child Nine Years Old Discretionary; Where Full Investigation as to Competency of Witness Nine Years Old Shown, Discretion in Admitting Evidence Not Disturbed.*

    Whether a child nine years of age is competent to testify as a witness in a criminal case is a question which is ad-

dressed to the sound discretion of the trial judge; and if it appears that full investigation and examination was made by counsel and the court, in the presence of the jury, as to her age, mentality, capacity and' legal and moral accountability, which discloses the usual degree of intelligence, memory and appreciation of the obligation of an oath to speak the truth, the discretion of the trial judge in permitting the evidence to go to the jury will not be disturbed.   (p. 500).

3.   JURY—*Challenge to Panel Summoned for Day Later Than First Day of Term Not Sustained, on Ground That Judge's Order Not Entered of Record.*

A challenge to the panel of jurors summoned* to attend a regular session of a criminal court on a day in the term later than the first day thereof will not be sustained on the ground that the judge orally ordered the clerk to issue the venire summoning the jurors to appear later than the first day of the term, and that the order was not entered of record.   (p. 501).

4.   CRIMINAL LAW—JURY—*Ground on Which Challenge to Array Based Must be Specifically Stated and Ruling Made Part of Record.*

The ground on which a challenge to the array of jurors is based must be specifically stated in order that the court and the prosecution may be advised, and the latter may have an opportunity to demur thereto or raise issue of fact thereon; and the action of the court in disposing of the issue of law or fact made thereon must be made a part of the record before error will' lie.   (p. 506).

5.   SAME—*Challenge to Array Because of Irregularity Not Sufficient to Set Aside Verdict, Unless Made Before Jury Sworn or Shown Prejudicial.*

A challenge to the array because of irregularity in the venire facias or in the drawing, summoning or impaneling of the jurors will not be sufficient to set aside a verdict unless the challenge was made before the swearing of the jury, or the party was injured by the irregularity.   (p. 503).

Error to Circuit Court, Raleigh County.

Bertha Price was convicted of murder in the second degree, and she brings error.

*Affirmed.*

*McGinnis, Maxwell & McGinnis* and *C. M. Ward,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

Bertha Price was found guilty by a jury of murder in the second degree upon Emma Smith, and was sentenced on the 5th day of July, 1923, to fifteen years confinement in the penitentiary; from which sentence she prosecutes this writ of error.

The homicide was committed on June 11, 1923, in front of the house of deceased. The accused left her home at Beckley to visit a relative in the town of Skelton about one mile distant, and passed by the home of Emma Smith. On returning from her visit and while passing by Emma's home an altercation arose between them which resulted in the homicide. Emma was shot in the back by a revolver in the hands of the accused. Defendant claims that deceased had the pistol and attacked her with it and in trying to disarm the deceased and while the deceased was choking her, biting her and threatening to kill her, the pistol then in the hands of the accused was discharged with the fatal result. As is usual in such cases, the evidence of the state is quite to the contrary. The state's witnesses say the accused stopped at Emma's gate and requested her to come to the gate a moment; that after a short conversation Emma started to return to her dwelling when she was again accosted by accused and went back to the gate. On reaching it the accused pulled her through the gate, struck her with an umbrella, shot her twice with a revolver and then fled. She was apprehended by the officers while attempting to reach Beckley in a roundabout way. The evidence of the state is amply sufficient to sustain the verdict, and the jury having passed upon the conflict in the evidence, it can not be disturbed. The evidence of the accused does not easily accord with the physical facts. The motion to set aside the verdict because contrary to the law and evidence was properly overruled.

Error is assigned because the court admitted the evidence of Carrie Storey, a child of nine years of age, to go to the jury, for the reason that she was of tender years, did not know the obligation of an oath, and hence incompetent. She

was the daughter of deceased Emma Smith, and witnessed the homicide.   Her testimony is corroborative of that of other witnesses.   Her competency was tested by examination before the court and jury by the prosecuting attorney and by counsel for defendant.   She could read and write, attended a public school and was in the third grade, attended church and Sunday school, stated that she was sworn to tell the truth and if she did not tell the truth she would be sent to the reform school, and at death would go to hell.   The moral obligation upon her to tell the truth and the consequences for not doing so had been impressed upon her by her mother and her preacher.   She exhibited sufficient intelligence and sufficient moral sense for her evidence to be admitted to the jury. The question of the competency of a child as a witness in any case is always addressed to the sound discretion of the judge, and if it appears that a careful and full examination as to the age, intelligence, capacity and moral accountability has been made by the judge and counsel before the jury, and the trial judge has concluded that she is competent, the appellate court will not reverse the ruling which permits the evidence to be introduced unless it is apparent that it was flagrantly wrong.   The demeanor, intelligence and mentality are more apparent to the trial judge and the jury than to the appellate court which does not have the witness before it; but simply a written lifeless record.   *State* v. *Driver,* 88 W. Va. 479; 15 A. L. R. 917; *Uthermohlen* v. *Bogg's Run Co.,* 50 W. Va. 457; *State* v. *Michael,* 37 W. Va. 565.   This point of error is not well taken.

The main point of error insisted upon by defendant is that the court refused to quash the panel of jurors.   It appears that the term of the criminal court began on the 10th day of June, 1923, and the venire facias for the petit jury, for seventy jurors who had been drawn from the jury box, was issued by the clerk of the criminal court on the 3rd day of May, 1923, and directed the sheriff to summon the jurors to appear before the judge of the criminal court on the 14th day of June, 1923, to serve as petit jurors therein. The point of error is based on the assertion that the clerk had no power to issue the venire summoning the jurors to attend the court on the 4th day of the term unless the judge

or court had directed him so to do by an order entered of record; and it is stipulated that the judge did not enter such order of record, but that he gave to the clerk a verbal order in vacation directing him to summon the jurors to appear on the 4th day of the term instead of the first day. The point of error is based on section 7 of chapter 116 of the Code which directs the clerk, among other things, to issue a venire facias for thirty jurors unless the court shall order a greater or less number, and, "Such writ shall require the attendance of the jurors on the first day of the court or on such other day thereof as the court or judge may order." This section further provides that if a lesser number of jurors than thirty will suffice for the convenient dispatch of the business it shall be the duty of the court to enter such opinion of record expressing therein the number to be summoned, and then the venire facias shall not require a greater number to be summoned than that designated by the court, unless thereafter otherwise directed. Under this section the court, or judge in vacation, by written order entered of record at least twenty days before the term, may dispense with the jury and its services at that term. It is argued that inasmuch as the section requires the court, by written order to dispense with the services of the jury, or by written order to require the attendance of a less number than thirty, and nothing is said in the section about a verbal or unrecorded order of the court or judge in such matters, that the section should be construed to mean that the court or judge could only direct the jurors to be summoned at a day other than the first day of the term by recorded order. We do not think this point of error is well taken. Generally the statutes which direct the manner in which the jury panel shall be drawn and summoned are in most respects merely directory, but of course the material provisions of the statutes which are designed to secure a fair and impartial trial must be substantially complied with. 24 Cyc. 218. The object of the statute is to procure a fair and impartial jury. Their appearance to serve on the 4th day of the term instead of on the first day of the term could not affect their fairness or impartiality. The failure of the judge to enter his order in vacation directing the clerk to summon the jury for the fourth day of the term, if it could be con-

sidered a failure, is a mere irregularity which could not be prejudicial to the prisoner. In some jurisdictions it has been held that if the jurors are regularly drawn and appear, their competency is not affected by the fact that they were not regularly summoned, or that they appeared without any summons or call whatever. *People* v. *Burgess,* 153 N. Y. 561; *Fellows Case,* 5 Me. 333. At common law a writ of venire facias was necessary for the summoning of a jury, and in the Virginias it has been held indispensable in a felony case, and the failure of the record to show that there was a venire facias has been held to be a fatal defect. *Barker* v. *Comm.,* 90 Va. 820. Under the Virginia statute it was necessary for reversal that the ground for exception should be made before the jury was sworn. Our statute above referred to, section 7, chapter 116, Code, does not require in terms that the court or judge in directing the attendance of jurors on a day other than the first day of the term shall incorporate the requirement in an order entered of record. We hold that the statute in that regard is directory, and that there has been a substantial compliance with it in this case. It appears that on the 23rd of June the court found it necessary to summon additional jurors for service during the remainder of the term, and the order shows that the clerk did draw, in the presence of the court, certain additional jurors and on that day issued a venire facias for thirty additional jurors so drawn to appear on the 25th of June and serve as petit jurors for the trial of causes. Four of the jurors who tried the case were selected from the thirty additional jurors drawn and summoned, and no exception is made to them. It is contended that the other eight jurors who tried the case were taken from the panel summoned to appear on the 4th day of the term upon the verbal order of the court as above set out, and it is to these eight jurors and to the first panel of seventy jurors summoned to attend on the 4th day of the term that the motion to quash the entire panel was directed.

It appears also from the certificate of B. E. Meadows and Harvey Cook, jury commissioners for the criminal court of Raleigh county, that on the 3d day of May they met at the clerk's office, in obedience to a summons served on them, for the purpose of drawing a list of petit jurors for the ensuing

term of the criminal court as required by law, and that they drew the names of seventy persons from the petit jury box of the *circuit* court of Raleigh county to serve as jurors at the June term, 1923, of the criminal court, and who were required to appear on the 4th day of said term.  The point is raised in the brief of defendant's counsel, but not urgently pressed, that the court should have quashed the panel of seventy jurors because they were drawn by the jury commissioners from the petit jury box of the *circuit* court, and that the eight jurors who were selected from that panel to try the case should have been discharged.  Just how the certificate of the jury commissioners of the criminal court, which appears in the record, got into the record does not clearly appear. The stipulation, which is not signed, is to the effect that no venire facias was issued by the clerk returnable on the first day of the term, but that one was issued by the clerk on the verbal order of the judge summoning the jurors drawn to appear on the 4th day of the term, and that an order was entered by the court on the 23d day of June directing the clerk to issue a venire for thirty additional jurors to attend on the 25th day of June and that the certified copy entered on the 23d day of June showing the additional jurors drawn was made a part of the record, and also a certified copy of the order of venire facias that was entered upon the verbal order of the court was also made a part of the record.  The certificate of the jury commissioners was not made a part of the stipulation, nor does it appear to have been brought to the attention of the trial judge in any way.  The challenge to the array and the motion to quash the panel was based on the ground that no venire facias was issued returnable on the first day of the term, and that no order of record was entered by the court directing the venire to be returned at some other day of the court.  This motion to quash was overruled, and we think properly so, on the ground assigned. The court's attention was not directed to the fact that the original panel had been drawn from the petit jury box as appears from the certified copy of the proceedings of the jury commissioners of the criminal court found in the record.  The alleged error in drawing the jury was not presented to the lower court.  No issue of law or fact was made upon it.  The point is raised

in this court for the first time. Section 19 of chapter 116 of the Code says that no irregularity in the drawing of the venire facias or in the summoning or impaneling of jurors shall be sufficient to set aside the verdict, unless the party making the objection was injured by the irregularity, or unless the objection is made before the swearing of the jury. When a challenge to the array is made the mode of trial is, at common law, at the discretion of the court. Wharton's Crim. Pro. (10th Ed.) Vol. 3, sec. 1620. At common law every challenge either to the array or polls was required to be in writing and propounded in such a way that it might be put upon the record with great particularity. Challenges to the array are usually for the cause of relationship, partiality, fraud, gross irregularity or corruption on the part of the officials who make the selection or if the statutory requisites material to the proper selection have not been complied with, and if the proof sustains the basis of the challenge the whole array will be quashed. When the array is challenged the cause must be specifically stated, and the opposite party may either plead to it or demur to its sufficiency of law. "If he plead, then the triers are sworn and charged to inquire, whether it be an impartial array or a favorable one." Wharton's Crim. Pro. Vol. 3 (3d Ed.) section 1621. And at common law, if the challenge was to the poll, triers were appointed by the court. But in our jurisdiction these challenges to the polls are always tried by the court; and challenges to the array are also disposed of by the court. But the cause for the challenge must be specifically stated; if it is for an irregularity in the drawing of the jury or in the manner in which they have been summoned into court, for any irregularity in the selection or summoning of the jury, or because of relationship, partiality, fraud on the part of those charged with the selection or summoning of the jury, it must be stated in the challenge as to the ground so that the opposite party may raise an issue thereon whether it be tried by the court or by triers. And it is stated in Thompson & Merriam on Juries, section 253: "If a party defendant avail himself of an erroneous ruling of the trial court upon a subject of challenge, the record must distinctly set out the grounds of such challenge," citing many cases in support of the text. The prac-

tice upon challenges in earlier times required formal procedure; the adverse party demurred, which brought up the validity of the matter of challenge, or he set up some new matter consistent with the matter of challenge, which would annul it as a ground for challenge. Strong. J. in *Clark* v. *Van Vrancken*, 20 Barb. 278, said: "A challenge is in the nature of a pleading, and must be denied by answer or demurrer, and an issue formed upon it to be formally tried. The issue makes a part of the record, and the proceedings and decision may be reviewed on appeal." Thompson & Merriam on Juries, Subject, Trial of Challenges, secs. 232-3. In the instant case, if the errors now assigned regarding the improper drawing of the jury had been stated as a ground for the motion to quash the array the other side would have had an opportunity to show that the certificate of the jury commissioners of the criminal court offered to sustain the challenge was in fact erroneous as stated in the certificate; the mistake, if any, could have been shown. The prosecution was given no opportunity to so show. As the certificate of the jury commissioners does not appear to be a part of the stipulation and was not made a part of the record either by the stipulation or by any order, and inasmuch as the challenge to the array was based solely upon the failure of the court to direct by order of record the clerk to issue a venire facias for the jurors, returnable on the 4th day of the term, we think the point of error here raised comes too late and can not be considered. "When the action of the court as in cases of challenge to the array and peremptory challenges, is placed on record, and there is a regular issue and joinder, and judgment on this issue, then error lies to this at common law." Wharton's Crim. Pro. Vol. 3 (10th Ed.) section 1630.

The instructions alone remain to be considered. Eighteen instructions for the accused were offered, one No. F was refused, and two, Nos. P and T, were modified and given. No point of error is raised in the brief on the refusal to give instruction No. F which states the punishments which may be imposed for murder in the first and second degrees and for voluntary and involuntary manslaughter. This was but a repetition of state's instruction No. 4 and was properly refused. Instruction No. P, modified and given, told the jury

as given that no statement made by any witness contradictory to his or her testimony could be used by the jury as proof in any degree of any fact or circumstance tending to incriminate the defendant but could only be used to impeach such witness or witnesses making such contradictory statements. The part stricken out would have told the jury that they could not infer or imagine without evidence that defendant was guilty of any act which incriminates or tends to incriminate her without evidence to support it. This feature stricken out was covered and reiterated in the other instructions, and we can see no prejudice to the jury in striking out this part of the instruction. Instruction No. R told the jury that "the defendant has the right to testify in her own behalf and the jury can not arbitrarily reject her testimony where it is not contradicted directly or indirectly by other witnesses or the facts and circumstances in the case made out by the evidence of the state against her;" the court added thereto the following: "but her testimony is to be weighed by the same rules as other testimony in the case," and with this addition gave the instruction. The words added to this instruction by the court were in defendant's favor, telling them that they could not arbitrarily reject her testimony, where not contradicted by others or by the facts and circumstances but that they should weigh her testimony by the same rules as other testimony in the case. There could be no prejudice to her by the addition of these words to the instruction.

Perceiving no error, the judgment will be affirmed.

*Affirmed.*