STATE OF WEST VIRGINIA

*v.*

ROBERT PORTER DAGGETT

(No. 14308)

Decided July 13, 1981.

412

*Richard A. Bush* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *S. Clark Woodroe,* Assistant Attorney General, for defendant in error.

MCGRAW, JUSTICE:

The appellant, Robert Porter Daggett, was convicted in November of 1977 of the first degree sexual assault of a six-year-old boy. He appeals from the judgment of conviction and from the order of the Circuit Court of Wood County which sentenced him to spend not less than ten nor more than twenty years in the penitentiary.

He assigns numerous grounds as error, six of which we believe merit discussion. He argues that the trial court erred by denying his motion for a bifurcated trial, thus preventing him from effectively presenting his insanity defense. He complains that the lower court erred in allowing the infant victim to testify. He complains the lower court should have granted his request to have a psychologist testify at the hearing concerning his waiver of *Miranda* rights before admitting into evidence a statement the appellant made to police while in custody. He objects to the lower court's refusal to allow him surrebuttal for the purpose of impeaching one of the State's important witnesses on the issue of the appellant's sanity. He argues that the trial court's charge to the jury failed to completely inform the jury of the burden of proof on the issue of sanity

and also failed to inform the jury of the consequence to the appellant of a finding of not guilty by reason of insanity. Finally, he contends that he was entitled to an instruction on third degree sexual assault.

We find merit in some of the errors assigned, and we reverse the judgment of the lower court and award the appellant a new trial.

On an April day in 1977, the victim, a child, his two sisters, and his mother and her male companion, visited the City Park in Parkersburg. The boy proceeded to a drinking fountain near the park pavillion. While he was quenching his thirst, the appellant, who was riding his bicycle in the park, noticed the child and initiated a conversation with him. After the two talked for a moment, the boy entered the men's restroom in the pavillion. The appellant followed him. While in the restroom, the appellant took the boy into a toilet stall and forcibly committed fellatio upon him. After waiting several minutes for her son, the boy's mother sent her male companion into the restroom to check on him. The companion discovered the appellant in the course of the assault, struck him, and led him outside. Once outside, the appellant pleaded with the mother to let him go, stating that he had never done anything like this before. The police were called, and the appellant was arrested. He was taken to the police station where, upon questioning, he made an inculpatory statement.

Prior to trial, the appellant was examined at Spencer State Hospital. He was also examined by a local psychiatrist and a local psychologist. The court considered this evidence in denying the appellant's motion for a bifurcated proceeding. In its case in chief, the State introduced, over the appellant's objection, the testimony of the infant victim. The State also produced the testimony of the police officers investigating the assault, some of whom had taken the inculpatory statement from the appellant while he was in custody, and produced the testimony of the victim's mother.

The appellant's evidence consisted of his own testimony, the testimony of his mother, and the testimony of the

psychologist who examined him. The bulk of this testimony went to the appellant's insanity defense. In rebuttal, the State offered the testimony of the psychiatrist who examined the appellant. After the close of the evidence, the appellant moved to reopen his case to impeach the psychiatrist, but the trial court denied this motion. The jury was instructed, closing arguments were made, and the jury returned with a guilty verdict.

Many of the issues involved in this case are interrelated; that is, the disposition of one assignment of error will affect the resolution of other assignments of error. In the interests of judicial economy, we will first address those issues raised which can be independently evaluated.

The appellant assigns as error the trial court's refusal to grant a requested instruction concerning the consequences to the appellant should the jury find him not guilty by reason of insanity.

We recently held that a defendant relying upon the defense of not guilty by reason of insanity was entitled to an instruction which correctly informs the jury of the consequences of a verdict of not guilty by reason of insanity. *State v. Nuckolls*, ____ W.Va. ____, 273 S.E.2d 87 (1980). In *Nuckolls*, we said "[i]n any case where the defendant relies upon the defense of insanity, the defendant is entitled to [an] instruction which advises the jury about the further disposition of the defendant in the event of a finding of not guilty by reason of insanity which correctly states the law . . . ." Syllabus point 2, in part, *State v. Nuckolls, supra.* We agree that the court erred in refusing the tendered instruction. *Nuckolls'* expressly overruled syllabus point 6 of *State v. Grimm*, 156 W.Va. 615, 195 S.E.2d 637 (1973), where we held that an instruction on a defendant's disposition constituted impermissible advice to the jury on the question of "punishment", a matter for the Court to consider and not the jury. *State v. Grimm*, 156 W.Va. at 627-28, 195 S.E.2d at 645.

In *State v. Milam*, 163 W.Va. 752, 226 S.E.2d 433 (1976), we foreshadowed the demise of the *Grimm* rule. *Milam* held that it was not error to refuse an erroneous instruction

which advised the jury as to the disposition of the defendant should they find him not guilty by reason of insanity. Syllabus point 9, *Milam, supra.* However, we indicated our willingness to reevaluate the rule of *State v. Grimm, supra,* when we said in *Milam,* "[t]his Court may in the future consider favorably an instruction of this type under scrutiny where it is warranted by the facts of the case." 226 S.E.2d at 442.

The *Milam* decision was a long first step in recognizing the jury's fact-finding needs when the defendant has raised the insanity defense. The insanity defense is of relatively recent vintage in our legal tradition. It first appeared in Anglo-American jurisprudence in *Daniel M'Naghton's Case,* 8 Eng. Rep. 718 (1843). The substance of the defense has been modified as our understanding of insanity has grown. *State v. Myers,* 159 W.Va. 353, 222 S.E.2d 300, 302 (1976); *State v. Grimm,* 156 W.Va. 615, 195 S.E.2d 637 (1973). *See generally,* LaFave and Scott, *Handbook on Criminal Law,* Responsibility §§ 37-38 (1972). As our understanding grows, so must our law.

In *Nuckolls, supra,* we found that it was unfair to deny a defendant a requested jury instruction on his disposition should the jury find him not guilty by reason of insanity. 273 S.E.2d at 90. There is potential for a grave miscarriage of justice if the jury is confused about the consequences of such a verdict. In a close case, the jury may find a defendant guilty as charged without careful evaluation of his insanity defense if it is not instructed as to the procedural consequences of a finding of not guilty by reason of insanity. Eliminating this source of jury confusion and its potential for compromising the integrity of its fact-finding role is the underlying rationale of our holding in *Nuckolls.* With the issue squarely presented in that case, we approved a correct instruction on the disposition of the defendant found not guilty by reason of insanity. *Nuckolls* embodies our concern for both the jury's needs and the defendant's rights.

There is evidence in the instant case that the jury was confused about the insanity issue. After the trial judge refused the requested instruction and the jury retired for

deliberation, the foreman returned to the court to ask if the jury could make a recommendation regarding its verdict. The trial judge asked if the question concerned the disposition of the appellant. The foreman replied that it did, and the judge refused to allow the jury to make a recommendation. We may fairly infer that the jury was uncertain about the consequences of its findings. Thus, the denial of the instruction might have undermined the jury's further deliberations.

The disposition instruction must accurately specify the procedure established by W.Va. Code § 27-6A-3, as amended, and §§ 27-5-1 *et seq.*, as amended. *State v. Milam,* 163 W.Va. 752, 226 S.E.2d at 442. The court of record may order that a person found not guilty by reason of insanity may be hospitalized in a mental health facility for observation and examination. W.Va. Code § 27-6A-3(a). During the observation period, procedures for civil commitment may be initiated before the court pursuant to W.Va. Code §§ 27-5-1 *et seq.* If it is shown upon clear, cogent, and convincing proof that the individual is mentally ill and because of his illness is likely to cause serious harm to himself or to others if allowed to remain at liberty, and there is no less restrictive alternative, the court may order him hospitalized in a mental health facility for an indeterminate period. W.Va. Code § 27-5-4(j)(k).

An order for an indeterminate hospitalization expires at the end of two years unless the Department of Health extends the order prior to expiration. The individual may request a hearing by the court on the necessity of continued indeterminate hospitalization. W.Va. Code § 27-5-4(k)(4).

The individual will not be discharged without notice to the court and to the prosecuting attorney. Either the court or the prosecuting attorney may make a written objection to the discharge. If either objects, the court will conduct a hearing within ten days, and the individual will be discharged unless it is again shown by clear, cogent, and convincing proof that he is mentally ill, is likely to cause serious harm to himself or others if discharged, and there

is no less restrictive alternative. If that is not shown, the individual will be released. W.Va. Code § 27-6A-4.

While the lower court correctly interpreted the *Grimm* rule in deciding to refuse the tendered instruction, we conclude that it would be unfair to deny the appellant the benefit of the *Nuckolls* rule which was announced during the pendency of this appeal. This is especially so in light of the *Milam* decision which indicated that this issue was ripe for close scrutiny by this Court. The appellant here properly preserved this issue for appellate review, and his preservation of it meets the test for retroactive application laid down in *State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431, 437 (1977). *See also, Jones v. Warden, W.Va. Penitentiary,* 161 W.Va. 168, 241 S.E.2d 914 (1978), *cert. denied* 439 U.S. 830, 99 S.Ct. 107, 58 L.Ed.2d 125; and, footnote 8, *Hankerson v. North Carolina,* 432 U.S. 233, 244, 97 S.Ct. 2339, 2345, 53 L.Ed.2d 306, 316 (1977).

We find persuasive the reasoning of two other jurisdictions which have addressed this issue. *People v. Hardin,* 607 P.2d 1291 (Colo. 1980), and *State v. Liesk,* 326 So.2d 871 (La. 1975). *See also, People v. Robbins,* 35 Mich. App. 372, 192 N.W.2d 684 (1971). Accordingly, we hold that the denial of the requested instruction was reversible error, and we remand this case for a new trial on this point.

The appellant also assigns error to the trial court's instruction on the burden of proof when the insanity defense is raised. He argues that the instruction is incomplete. The instruction reads:

> Every man is presumed to be sane and to be free of such mental defect or disease causing him to lack the capacity either to appreciate the wrongfulness of his act or to conform his conduct to the requirements of law until the contrary is proved by a preponderance of the evidence to the satisfaction of the jury. In that regard, the Court further instructs the jury that a plea of not guilty by reason of insanity is an affirmative defense and the defendant has the burden of proof on the issue of insanity and must prove such insanity by a preponderance of the evidence.

We agree that the instruction given was incorrect, and we find this to be reversible error, too.

Presumptions in criminal law are viewed with suspicion by this Court. *State v. Ball*, 164 W.Va. 588, 264 S.E.2d 844, 846, (1980); *State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210, 222 (1976). Presumptions, or inferences, can be a useful tool in allowing a jury to infer an elemental fact from a basic fact established beyond a reasonable doubt. However, presumptions, when used improperly, can allow criminal convictions without meeting the beyond a reasonable doubt standard for the elements of the crime charged. Such convictions violate the constitutional requirements of due process of law. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Based on *Mullaney, supra,* we held that "[i]n a criminal prosecution, the State is required to prove beyond a reasonable doubt every material element of the crime with which the defendant is charged, and it is error for the court to instruct the jury in such a manner as to require it to accept a presumption as proof beyond a reasonable doubt of any material element of the crime with which the defendant is charged or as requiring the defendant either to introduce evidence to rebut the presumption or to carry the burden of proving the contrary." Syllabus point 4, *State v. Pendry,* 159 W.Va. 738, 227 S.E.2d 210, 213 (1976). We recently reaffirmed this rule in *State v. Whiting*, 164 W.Va. 352, 263 S.E.2d 896 (1980).

A major difficulty with presumptions lies in the very meaning of the word "presume". In *State v. O'Connell*, 163 W.Va. 366, 256 S.E.2d 429, 431 (1979) we accepted this definition of "presume": to suppose to be true without proof.[1] This meaning accords with the common, ordinary use of the word "presume". We agree with the United States Supreme Court which recently indicated that the effect of a presumption must be determined by the way in

---

[1] Webster's New Collegiate Dictionary 911 (1974), cited in *Sandstrom v. Montana,* 442 U.S. 510, 517, 99 S.Ct. 2450, 2456, 61 L.Ed.2d 39, 46 (1980).

which a reasonable juror could have interpreted the instruction. *Sandstrom v. Montana*, 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39, 45 (1980).

"In a criminal prosecution, it is constitutional error to give an instruction which supplies by presumption any material element of the crime charged." Syllabus, *State v. O'Connell*, 163 W.Va. 366, 256 S.E.2d 429 (1979). Syllabus point 1, *State v. Sacco*, 165 W.Va. 91, 267 S.E.2d 193, 195 (1980). The jury must be free to reject any presumption or inference unless it believes it is established from all the evidence beyond a reasonable doubt. *State v. Pendry*, 159 W.Va. 738, 227 S.E.2d at 222. Further, it is constitutionally impermissable to use a presumption to shift the burden of proof from the state to the defendant on any material element of the crime charged. *State v. O'Connell, supra*; *State v. Pendry, supra*. An instruction allowing a juror to make certain inferences or presumptions may be viewed by a reasonable juror as a device shifting the burden of proof to the defendant.

Despite our reluctance to allow presumptions in the criminal law, we recognize that it is generally held that there is a presumption of the defendant's sanity at the time of the crime. This presumption disappears upon the introduction by any party of evidence fairly raising doubt on the sanity of the defendant. Once this evidence is produced, the State has the burden of proving the defendant's sanity beyond a reasonable doubt. 21 Am. Jur.2d *Criminal Law* § 50 (1965); 10 M.J. *Insane and Other Incompetent Persons*, § 51 (1977 Replacement Vol.).

The reason the presumption of sanity, which is really an assumption, is constitutionally permissible is fairly straightforward. "[T]he issue of insanity as a defense to a criminal charge [is] considered by the jury only after it has found [that] all the elements of the offense, including *mens rea*, . . . had been proved beyond a reasonable doubt. . . . [T]he existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime." *Mullaney v. Wilbur*, 421 U.S. 684, 705-06, 95 S.Ct. 1881, 1893, 44 L.Ed.2d 508, 523-24 (1975) (Rehnquist, J. and Burger, C.J. concur-

ring opinion). Thus, by presuming sanity, the State does not circumvent the constitutional requirement of proving every element of the offense beyond a reasonable doubt. *Id.*

"There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense. Syllabus point 2, *State v. Milam,* 159 W.Va. 691, 260 S.E.2d 295, (1979). Syllabus point 1, *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980). These decisions reaffirmed the new rule concerning the burden of proof of insanity which we announced in *Edwards v. Leverette,* 163 W.Va. 571, 258 S.E.2d 436 (1979).

In *Edwards,* we approved the following guidelines concerning the burden of proof of an insanity defense:

> When an accused is relying upon the defense of insanity at the time of the crime charged, the jury should be instructed (1) that there is a presumption the accused was sane at that time; (2) that the burden is upon him to show that he was then insane; (3) that if any evidence . . . introduced by him or by the State fairly [raises] doubt upon the issue of his sanity at that time, the presumption of sanity ceases to exist; (4) that the State then has the burden to establish the sanity of the accused beyond a reasonable doubt, and, (5) that if the whole proof upon that issue leaves the jury with a reasonable doubt as to the defendant's sanity at that time the jury must accord him the benefit of that doubt and acquit him. *Edwards v. Leverette,* 258 S.E.2d 436, 439-440.

We approved those guidelines to bring our law in accord with the majority view. *State v. Milam,* 260 S.E.2d at 300. "The purpose of the rule is to correlate the State's burden of proof beyond a reasonable doubt to all the facts necessary to establish the defendant's culpability. These facts include not only the essential elements of the offense charged, but also a negation beyond a reasonable doubt of those defenses which, if shown, would constitute an absolute bar to conviction or justification for the crime."

*State v. Milam,* 260 S.E.2d at 300; *State v. Grimm,* 270 S.E.2d at 176.

The appellant offered the testimony of a psychologist who examined him approximately four months after the crime to support his testimony of insanity at the time of the event. The State's evidence included the results of mental examinations administered at Spencer State Hospital and the expert testimony of Dr. Russell Heinlein, an independent psychiatrist who examined the appellant on three occassions. Although the evidence concerning insanity was inconclusive and contradictory, the appellant did produce sufficient evidence to shift to the State the burden of proving sanity beyond a reasonable doubt.

The instruction granted by the trial court in the instant case is identical to the one we found erroneous in *State v. Grimm,* 270 S.E.2d at 175. We have held that the rule announced in *Edwards v. Leverette,* has limited retroactive application when an objection is properly raised at trial and preserved on appeal. *State v. Milam,* 260 S.E.2d at 301; *State v. Grimm,* 270 S.E.2d at 176. This is consistent with our holding in *Jones v. Warden, W.Va. Penitentiary,* 161 W.Va. 168, 241 S.E.2d 914 (1978), *cert. denied* 439 U.S. 830, 99 S.Ct. 107, 58 L.Ed.2d 125. See especially footnote 8, *Hankerson v. North Carolina,* 432 U.S. 233 at 244, 97 S.Ct. 2339 at 2345, 2346, 53 L.Ed.2d 306 at 316. The appellant in the instant case properly took exception to the instruction and preserved the issue for appeal. Accordingly, we also find reversible error here.

The appellant assigns error to the trial court's refusal to allow him to reopen his case in surrebuttal to impeach the State's expert witness, Dr. Russell Heinlein. Dr. Heinlein testified at a pre-trial hearing that the appellant suffered from pedophilia, which he characterized as a mental illness.[2] However, when called by the State as an expert

---

[2] According to one noted expert in the field of legal medicine, pedophilia can indeed be the product of a functional mental illness.

"The large number of pedophiles who pass through the courts may be separated into broad groups in relation to the underlying pathology of the offender, as offenders motivated by (1) pansexual

witness to rebut the appellant's evidence of insanity, Dr. Heinlein testified that pedophilia was not a mental illness. The State rested after Dr. Heinlein's testimony. The appellant declined surrebuttal, closed his case, and the proceedings ended for the day. The next day the appellant immediately requested the trial court allow him to reopen his case in surrebuttal to impeach Dr. Heinlein's testimony. The trial court refused. We hold that under the facts of this case, the trial court abused its discretion in refusing the request.

In general, whether or not a case shall be reopened for the introduction of evidence after both parties have rested, or after the close of the evidence, is within the discretion of the trial court. 88 C.J.S. *Trial* § 106 (1955). We have followed the general rule in this jurisdiction in civil cases, syllabus point 5, *Moore, Kelly and Reddish, Inc. v. Shannondale Inc.*, 152 W.Va. 549, 550, 165 S.E.2d 113, 115 (1968) and in criminal cases, *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666, 667 (1974). The trial court's ruling will be reversed only for abuse of discretion.

"It is within the sound discretion of the court in the furtherance of the interests of justice to permit either party, after it has rested, to reopen the case for the purpose of offering further evidence and unless that discretion is abused the action of the trial court will not be disturbed." Syllabus point 4, *State v. Fischer, supra.* The court should not reopen a case except for good reasons and on proper showing, but the exigencies of each particular case go far in controlling the discretion of the court. The court is not justified in closing the case until all the evidence offered in good faith and necessary to the ends of justice has been heard. 75 Am Jur.2d *Trial* § 153 (1974). This is consistent with our holding in *State v. Johnson*, 159 W.Va. 682, 226 S.E.2d 442, 446 (1976). *See also, State v. Favors*, 92 Ariz. 147,

---

drives, *i.e.*, excessive sexual impulses gratified by any sex object, (2) sexual neurosis and psychopathy, or (3) organic brain disease (senile psychosis, cerebral arteriosclerosis, mental deficiency) or *functional mental illness* (e.g., schizophrenia)." (Emphasis added). W. Bromberg, *The Uses of Psychiatry in the Law*, (Quorum Books, 1979).

375 P.2d 260, (1962) and *Fink v. Higgins Gas and Oil Co.*, 203 Va. 86, 122 S.E.2d 539 (1961). *But see*, 23 C.J.S. *Criminal Law* § 1055 (1961); *Ditter v. Yellow Cab Co.*, 221 F.2d 894, (7th Cir. 1955); *State v. Boodry*, 96 Ariz. 259, 394 P.2d 196 (1964); *cert. denied* 379 U.S. 949, 85 S.Ct. 448, 13 L.Ed.2d 546.

Refusing to allow the appellant to reopen his case did not further the interests of justice. The insanity defense was the crucial issue in the case. Dr. Heinlein's testimony was the State's most important evidence in rebutting the appellant's insanity claim. Dr. Heinlein's earlier testimony at the pre-trial hearing was clearly inconsistent, and the appellant should have been allowed to attempt to impeach the psychiatrist. "Prior out-of-court statements may be used to impeach the credibility of a witness, and a prior inconsistent statement may be introduced concerning any specific matter about which the witness has testified at trial . . . ." Syl. pt. 2, in part, *State v. Spadafore*, 159 W.Va. 236, 220 S.E.2d 655 (1975). There is no evidence that the appellant was dilatory in moving to reopen as his motion was made prior to closing arguments and jury instruction. *See Stefanos v. State*, 80 Fla. 309, 86 So. 204 (1920). We hold that the trial court abused its discretion in refusing the appellant's request. When in doubt, reopen.

While our rulings on these matters pertaining to jury instructions and reopening of the case are dispositive on the issue of whether the appellant is entitled to a new trial, the appellant assigns several other grounds for error which warrant discussion.

The appellant argues that the trial court should have allowed the testimony of Gary Norum, a licensed psychologist, at the *in camera* hearing to determine whether the appellant voluntarily waived his right to counsel before making a statement to police admitting the offense. The record reflects that before the statement was taken, the appellant was read each *Miranda* right and asked by the officers if he understood the right. Upon receiving an affirmative response, the next right was read and a like answer obtained. The appellant then made a statement admitting that he had committed the assault charged.

There is strong evidence that the appellant is of low intelligence. Tests administered at Spencer State Hospital indicate his I.Q. is within the range of borderline mental retardation. He did not complete high school until he reached twenty-one years of age. Given these facts and the plea of insanity as the chief defense, a trial court must be cautious in determining whether the appellant could intelligently waive his right to counsel and make a voluntary statement. We held at Syllabus point 1 of *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977) that "[c]onfessions elicited by law enforcement authorities from persons suspected of crimes who because of mental condition cannot knowledgeably and intelligently waive their right to counsel are inadmissible."

Refusing to allow the psychologist's testimony prevented the trial judge from conducting a complete investigation of the appellant's ability to intelligently and voluntarily make the admission.

We recently held that "[i]t is error to deprive a defendant an opportunity to produce psychiatric testimony at an *in camera* hearing to show that his confession was not voluntary because he was probably insane at the time he gave it." Syllabus point 1, *State v. Milam*, 163 W.Va. 752, 260 S.E.2d 295, 296 (1979). Technically speaking, because Gary Norum is a psychologist, not a psychiatrist, *Milam* does not absolutely control here. However, the general principle of law is the same. We are persuaded that Norum should have been allowed to testify at the *in camera* hearing to determine the voluntariness of the appellant's statement. The burden then would have fallen on the State to prove by at least a preponderance of the evidence that the statement was voluntary before it could have been admitted into evidence at the trial. Syllabus point 5, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242, 244 (1975); *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146, 148 (1978).

The appellant also alleges that the trial court erred in admitting into evidence the testimony of the infant victim. He contends that the infant, aged seven at the time of trial, was incompetent to testify because he was unable to answer simple questions, was easily led during questioning

by both parties, and did not understand the significance of his oath of truthfulness. The appellant claims the trial judge abused his discretion in admitting the infant's testimony. We disagree.

In *State v. Michael*, 37 W.Va. 565, 16 S.E. 803 (1893), we found that an infant's understanding of the nature and effect of a oath was crucial to his competence to testify. "If the proposed witness is an infant of such tender years and mind as to be legally irresponsible for [his] conduct, [as] to have no conception of the legal or moral obligation of an oath, nor of the pains and penalties for false swearing, [he] is not a competent witness." Syllabus point 2, *State v. Michael, supra.*

This Court has consistently held that the decision to allow or to refuse an infant's testimony is solely within the discretion of the trial judge, and will not be reversed on appeal unless there is a clear showing of abuse of discretion. State v. Driver, 88 W.Va. 479, 107 S.E. 189 (1921); *State v. Farley*, 125 W.Va. 266, 23 S.E.2d 616 (1942). As we stated in *State v. Price*, 96 W.Va. 498, 123 S.E. 283 (1924) "[t]he question of the competency of a child as a witness in any case is always addressed to the sound discretion of the [trial] judge, and if it appears that a careful and full examination as to the age, intelligence, capacity and moral accountability has been made by the judge and counsel . . . and the trial judge has concluded that [he] is competent, the appellate court will not reverse the ruling which permits the evidence to be introduced unless it is apparent that it was flagrantly wrong." 96 W.Va. at 501, 123 S.E. at 289. We recently reaffirmed this rule in *State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974).

In the instant case, the trial judge conducted an extensive *in camera* investigation of the infant's competence, with direct and cross-examination by both parties. The trial judge distinguished the instant case from *State v. Michael, supra,* because he found the child more intelligent and more understanding of truthfulness and lying than the infant in *State v. Michael.*

The trial judge was in the best position to evaluate the infant's competence. The infant's demeanor and his

understanding of the nature and effect of the oath are far better determined through live examination by the trial judge than by appellate review of the trial record.

The record does indicate, however, that the infant's testimony was disappointing. The infant at times appeared confused and he was easily led during questioning by both counsel. The trial judge has the duty to evaluate the infant's testimony before the jury. If at that time the infant seems incompetent to testify, the trial judge must strike the infant's testimony. On retrial, the trial court must carefully scrutinize the infant's testimony, both *in camera* and at trial, to ensure the competency of the infant victim's testimony.

On a related matter, the appellant contends that the lower court's comment concerning the embarrassment of the infant witness constitutes reversible error. We find this argument without merit. In *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979), we noted that a comment which does not go to a material issue bearing on the witness' credibility will not result in reversible error. 254 S.E.2d at 139. In the instant case, the witness had not made a statement which could be deemed material at the time of the court's comment. The court noted that the infant witness was embarrassed and excused him for the day, subject to recall. Thus, it can hardly be said that such an observation even went to credibility. *See also, State v. Wotring,* No. 14019 (June 9, 1981).

The appellant also alleges error because the State moved the trial court *ex parte* to issue a capias for the infant and his mother when they failed to return to court after being excused for the day, subject to recall. The appellant contends that it was an absolute requirement that he be present when the capias was issued. He cites W.Va. Const. art. 3, § 14, W.Va. Code § 62-3-2, as amended, and two cases, *State v. Vance,* 146 W.Va. 925, 124 S.E.2d 252 (1962) and *Louk v. Haynes,* 159 W.Va. 482, 223 S.E.2d 780 (1976), for the proposition that the defendant has an inalienable right to be personally present at all stages of the criminal process. We held in *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977) that the inalienable constitutional right cited was subject to the harmless error doctrine. While the right of the

defendant to be present during criminal proceedings is absolute, voluntary absence is subject to the harmless error analysis. If the defendant shows he was absent during a "critical stage" of the criminal proceedings, the State must prove the absence was harmless beyond a reasonable doubt. Syllabus point 6, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710, 713 (1977).

"[A] critical stage in a criminal proceeding is one where the defendant's right to a fair trial will be affected." 233 S.E.2d at 719. We noted in *Boyd* that while pre-trial hearings involving substantial matters of law or the testimony of witnesses are critical, a court's orders involving administrative matters in connection with the criminal proceeding do not require the presence of the accused. 233 S.E.2d at 719. Issuing the capias in the instant case did not prejudice the appellant's right to a fair trial. The witnesses had been subpoenaed and were informed by the court that they would be recalled on the day the capias was issued. Thus, the appellant should not have been surprised by their reappearance to testify. The trial judge merely exercised his discretion in issuing the capias to compel their appearance. Although the witness' subsequent testimony was detrimental to appellant's case, the capias ordered to bring them to court to testify did not prejudice his defense. We hold that ordering a capias to compel previously-subpoenaed nonparty witnesses to appear in court to testify was not a critical stage of the criminal proceeding and was harmless to the defense of the absent defendant.[3] We find no abuse of discretion in the trial judge's order in the instant case.

---

[3] We are not presented with the question of whether a capias is the proper procedural device with which a trial judge may obtain the appearance of a non-party witness to testify. Our research indicates that this is an unresolved question in West Virginia jurisprudence.

Traditionally, a capias is used to compel a defendant's appearance in court, while a subpoena is used for a non-party witness. Words and Phrases, "Capias", (1966), 5 Am Jur.2d *Arrest* § 52 (1962), Black's Law Dictionary 188, 1279 (5th Ed. 1979). However, it appears that the issuance of a capias by the bench to compel a previously-subpoenaed non-party witness to testify is a valid exercise of the judge's contempt power. "[A]s a necessary incident of its power to adjudge, a court of justice, within the sphere of its jurisdiction, has [the] inherent power

The appellant also claims it was reversible error to refuse his motions for a bifurcated trial on the issues of whether he committed the crime and if so, whether he was criminally responsible. The appellant's first motion for a bifurcated trial was denied following a pretrial hearing on the issue. The second motion was made after the prosecution had presented all its evidence. The appellant claims that the trial court should have then reconsidered the bifurcated trial issue because the State's case had been weakened and his insanity defense remained valid. "The right to a bifurcated trial lies within the sound discretion of the trial court."[4] Syllabus point 3, *State v. Bragg*, 160 W.Va. 455, 235 S.E.2d 466, (1977). This Court will reverse the denial of a motion for bifurcated trial only upon abuse of discretion. We hold that the trial court did not abuse its discretion in denying the motions for a bifurcated trial in the instant case.

Our decision in *Bragg* was based upon *United States v. Bennett*, 460 F.2d 872 (D.C. Cir. 1972). That case relied upon *Contee v. United States*, 133 U.S. App. D.C. 261, 410 F.2d 249 (D.C. Cir. 1969), which stated that "a sound exercise of the trial courts' discretion will ordinarily result in bifurcation

---

to compel the attendance of witnesses in proceedings before it, and the giving of testimony concerning relevant facts within their knowledge. ... The ordinary process by which attendance of a witness is commanded and required is the subpoena, and the mode of compelling obedience thereto is by attachment for contempt of court." 81 Am. Jur.2d *Witnesses* § 39 (1976). Apparently the judge granted the capias in lieu of citing the infant victim and his mother for contempt. *See, Hendershot v. Handlan*, 162 W.Va. 175, 248 S.E.2d 273 (1978). *See also, DiPalma v. Wiesen*, 163 Conn. 293, 298, 303 A.2d 709, 712 (1972), which held in a civil case concerning a non-party witness that "[i]f one is not warranted in refusing a subpoena and it is clear to the court that his absence will cause a miscarriage of justice, the judge should issue a capias." *DiPalma v. Wiesen* found the judge's use of a capias in such circumstances was discretionary and reversible only for abuse of discretion. We believe the *DiPalma v. Wiesen* reasoning is essentially correct.

[4] West Virginia recognizes the right to a bifurcated trial at common law. *State v. Bragg*, 160 W.Va. 455, 235 S.E.2d 466 (1977). Most other jurisdictions recognizing the right to a bifurcated trial on the issues of guilt and insanity rely on applicable statutory provisions. 23 C.J.S. *Criminal Law* § 940(1) (1961).

whenever a defendant shows that he has a substantial insanity defense and a substantial defense on the merits to any element of the charge, either of which would be prejudiced by simultaneous presentation with the other." 410 F.2d at 250.

A trial court does not abuse its discretion by refusing bifurcation where the defendant does not present a substantial defense both on the merits and on the issue of insanity. *State v. Bragg*, 235 S.E.2d at 471.

On remand, the trial court should reconsider *in camera* the appellant's motion for a bifurcated trial. The trial court's decisions on retrial concerning the voluntariness of the appellant's confession and the admissability of the infant victim's testimony could tip the scales in the appellant's favor on the merits; if so, a bifurcated trial might be appropriate.

The appellant also argues that the trial court erred in failing to instruct the jury on third degree sexual assault as a lesser included offense. We find this contention meritless. The statutory provisions, W.Va. Code § 61-8B-3 and W.Va. Code § 61-8B-5[5] must be read *in pari materia* to

---

[5] § 61-8B-3. Sexual assault in the first degree.

(a) A person is guilty of sexual assault in the first degree when: (1) He engages in sexual intercourse with another person by forcible compulsion; and (i) he inflicts serious bodily injury upon anyone; or (ii) he employed a deadly weapon in commission of the crime; or (iii) the victim was not a voluntary social companion of the actor on the occasion of the crime; or (2) He engages in sexual intercourse with another person who is incapable of consent because he is physically helpless; or (3) He, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old. (b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned not less than ten nor more than twenty years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than ten nor more than twenty years. (1976), c. 43.)

§ 61-8B-5. Sexual assault in the third degree.

(a) A person is guilty of sexual assault in the third degree when: (1) He engages in sexual intercourse with another person who is incapable of consent because he is mentally defective or mentally incapacitated; or (2) Being sixteen years old or more, he engages in

be consistent with the legislature's intention of creating two separate offenses.

We recently stated that the Sexual Offenses Act of 1976 replaced obsolete statutory provisions relating to sex crimes to reflect more contemporary understanding of criminal sexual conduct. *State v. Reed*, ___ W.Va. ___, 276 S.E.2d 313, 319 (1981). The new sexual statute defines differing levels of culpability in criminal sexual conduct. Sexual assault, consisting of three degrees of illegal sexual intercourse, W.Va. Code §§ 61-8B-3, 4, 5, was designed to punish more heinous offenses than sexual abuse, consisting of three degrees of illegal sexual contact, W.Va. Code §§ 61-8B-6, 7, 8, and sexual misconduct, W.Va. Code § 61-8B-9. The separate degrees of sexual assault and sexual abuse are distinguished by the nature of the conduct and the age of the victim. *State v. Reed*, 276 S.E.2d at 319.

"An offense qualifies as a lesser included offense only if the elements of the included offense are fewer in number than the elements of the greater offense, and if the greater offense cannot be committed without also committing the lesser offense." Wharton's Criminal Procedure § 545 (12th Ed. C. Torcia 1976). We have held that the lesser offense must be a necessary ingredient of the greater offense. *State v. Bailey*, 159 W.Va. 167, 220 S.E.2d 432, 437 (1975). We approve of the following definition of when an offense is necessarily included within another: "Before a lesser offense can be said to constitute a necessary part of a greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense. [I]f an element necessary to establish the corpus delicti of the lesser offense is irrelevant to the proof of the greater offense, the lesser

---

sexual intercourse with another person who: (1) is incapable of consent because he is less than sixteen years old; and (ii) is at least four years younger than the defendant. (b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years. (1976, c. 43).

cannot be held to be a necessarily included offense." 22 C.J.S. *Criminal Law* § 283a (1961) cited in *Jones v. Commonwealth*, 218 Va. 757, 240 S.E.2d 658, *cert. denied* 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 and 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 238. *See also* 42 C.J.S. *Indictments and Informations* § 286 (1944). For a comparison of the meaning of "necessarily included offenses" under Rule 31(c) of the Federal Rules of Criminal Procedure, *see* 5 Orfield, *Criminal Procedure Under The Federal Rules* § 31:12 (1967); and Annot., 11 A.L.R. Fed. § 173 (1972).

"The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense." *Cook v. State*, 258 Ind. 667, 671-72, 284 N.E.2d 81, 84 (1972). *See also, State v. Branch*, 108 Ariz. 351, 498 P.2d 218 (1972); *McCullers v. State*, 206 So.2d 30 (Fla. 1968). We summarized this test in syllabus point 7 of *State v. Bailey*, 159 W.Va. 167, 220 S.E.2d 432, (1975) where we said: "An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense."

The facts of the instant case technically comply with the age provisions of both first degree sexual assault, W.Va. Code § 61-8B-3(a)(3), and third degree sexual assault, W.Va. Code 6 61-8B-5(a)(2). However, there is an additional element required by third degree sexual assault, W. Va. Code § 61-8B-5(a)(2), which is not required for conviction under W.Va. Code § 61-8B-3(a)(3). An actor less than 16 years of age cannot be convicted of third degree sexual assault under the provisions of W.Va. Code § 61-8B-5(a)(2). However, one aged 14 years of age to 16 years of age can be convicted of first degree sexual assault under § 61-8B-3(a)(3). In short, it is legally possible to commit first degree sexual assault without first having committed third degree sexual assault. We hold that the additional element that the actor be 16 years of age or older for conviction under third degree sexual assault, W.Va. Code § 61-8B-5(a)(2), precludes that statutory provision from being a lesser included offense of first-degree sexual assault.

Comparing the other elements of first and third degree sexual assault, we find evidence that the legislature intended to create two fundamentally different offenses. First degree sexual assault also proscribes engaging in sexual intercourse by forcible compulsion and inflicting serious bodily injury, employing a deadly weapon, or committing the crime upon a victim who is not a voluntary social companion. W.Va. Code § 61-8B-3(a)(1). Third degree sexual assault has no requirement of any kind of forcible compulsion. In contrast, third degree sexual assault concerns unlawful sexual behavior among voluntary social companions in the manner of a statutory rape provision. *State v. Lawson,* 165 W.Va. 119, 267 S.E.2d 438, 439, footnote 2 (1980).

In short, although the sexual offenses statutes are inartfully drafted, *State v. Reed,* ___ W.Va. ___, 276 S.E.2d 313, 318 (1981), we find distinctions between the degrees of sexual assault. Third degree sexual assault, the statutory rape provision, is a wholly distinct crime. It is not a lesser included offense of first degree sexual assault.

Finally, we need not address the appellant's contention that the lower court erred in refusing to grant the motion for a directed verdict because we are reversing this case on other grounds.

In conclusion, we agree that the appellant was entitled to an instruction which correctly states the law pertaining to the disposition of a criminal defendant found not guilty by reason of insanity. The appellant is also entitled to an instruction which fully and completely recites the law concerning the burden of proof as it relates to the insanity defense. We also hold that the lower court should have allowed the appellant to reopen his case for purposes of impeaching the State's expert witness on the insanity issue, the crucial issue in the case. On retrial, the lower court should be acutely sensitive to the need for a full and thorough voluntariness hearing, and this hearing should include the testimony of the psychologist who examined the appellant as well as other relevant testimony. We do not believe the court abused its discretion, however, in allowing the infant victim to testify. If, however, the lower

court's ruling on this matter is different upon retrial, or the court rules differently at the voluntariness hearing, the court should reconsider the appellant's motion for a bifurcated proceeding. The appellant's contentions concerning the issuance of the capias and the refusal of the lower court to give a third degree sexual assault instruction are without merit. Accordingly, the judgment of the Circuit Court of Wood County is reversed and this case is remanded for a new trial.

*Reversed and remanded.*